*DANIEL ROBBINS vs. SCHOOL DISTRICT No. 1, ANOKA COUNTY.

*Subdivision* 4, *sec.* 70, *chap.* 23, *Comp. Stat.*, limits the fund out of which payment for the purposes specified therein shall be made by the trustees of a school district, but does not require that the funds shall be collected and paid to the trustees before they can contract for or purchase the objects embraced in the statute.

Under the provisions of this statute the trustees of a school district have authority to incur an indebtedness for the erection of a school house for the district, and postpone the payment of such indebtedness to a future day, and contract to pay interest on such indebtedness.

Evidences of such indebtedness, made by the trustees to R., in the form of promissory notes, are good between the parties as contracts for forbearance and promises to pay the amounts therein specified; and will bind the successors in

---

*This cause was heard and submitted before Mr. Justice Berry took his seat on the Bench.

Robbins v. School District No. 1, Anoka County.

office of the trustees; and an action may be maintained thereon by the payee against the district, whether the trustees are in possession of the particular fund out of which the debt is payable or not.

Under *sec.* 7, *chapter* 11, *Session Laws of* 1861, the trustees of the school district of the town of Anoka, by their action in pursuance of said section, united Subdistricts Nos. One and Two, of said town, under the style of Subdistrict No. One of the Town of Anoka. *Held*—That the intention of the trustees must determine whether their action was a merger of Subdistrict No. Two in Subdistrict No. One or not, and where their action is pleaded as such merger, a demurrer to the complaint admits the fact.

The action of the trustees under this section, uniting or consolidating two subdistricts, both being corporations, must be regarded as a merger of the old corporations into the new one, and in the absence of provision to the contrary, the new corporation succeeds to the rights and liabilities of the old ones.

The saving clause in *section* 60 of the act preserves the right of action, but the remedy must be had against the corporation as it now exists.

Where an indebtedness is payable out of a particular fund, the judgment must be executed out of that fund.

This action was brought in the district court of Anoka county. The allegations of the complaint are substantially: that in August, 1857, school district number two of Anoka county was a body corporate, duly organized under the laws of Minnesota; that at that time it designated a site for a school house in said district, levied a tax of $600 to build the same, and contracted with the plaintiff to build said house at the agreed price of $650; that plaintiff did build said house on said site; that on the 1st day of December, 1857, J. F. Clark, J. B. Lufken and A. W. Giddings were the duly elected, and qualified trustees of said district, and then accounted and settled with plaintiff for building said school house, and found and agreed upon a balance due the plaintiff therefor, to wit, $571.10; that in consideration of said sum of money, the said trustees made, executed and delivered to plaintiff two several instruments in writing, of which the following are copies:

" $363.71.   Eight months from date we the trustees of School District No. 2 of Anoka county, promise to pay Daniel Robbins, or

his order, three hundred and sixty-three dollars and seventy-one cents, interest at three per cent. per month until paid, for value received.

Dec. 1, 1857.

Trustees,

{ J. F. CLARK,
J. B. LUFKIN,
A. W. GIDDINGS."

"$207.39. Eight months after date we the trustees of School District No. 2, of Anoka county, promise to pay Daniel Robbins, or order, two hundred and seven dollars and thirty-nine cents, with interest at two per cent. per month until paid, for value received.

Dec. 1, 1857.

Trustees,

{ J. F. CLARK,
J. B. LUFKIN,
A. W. GIDDINGS."

That on the same day said trustees accepted and took possession of said school house; that said district occupied the same for school purposes until the fall of 1861 ; that in the fall of 1861 the said district, which was at that time sub-district No. 2 of the organized township of Anoka, in said county, was by action of the trustees of said district of Anoka township, merged in sub-district No. 1 of said township; that said sub-district No. 1 was at the said time, by the action of the said trustees, constituted of what had before that time been sub-districts Nos. 1 and 2 of said township; that school district No. 1 of Anoka county, the defendant, is a corporation duly organized under the laws of Minnesota, and is identical with the said sub-district No. 1 of the township of Anoka, and embraces the whole of said school district No. 2 of Anoka county. That upon the formation of the said sub-district No. 1, it took possession of said school house, which ever since has been, and now is, used and occupied by said sub-district No. 1, which is now school district No. 1, Anoka county, the defendant; that no part of said sum of money has been paid, that plaintiff is the legal owner and holder of said instruments. Judgment for $691.57 with interest from August 1, 1858, is demanded.

The only material allegation of the complaint put in issue by the answer is, "that on the first day of December, 1857, J. F. Clark,

J. B. Lufkin and A. W. Giddings were the duly elected and qualified trustees of school district No. 2 of Anoka county." . This issue was submitted to a jury, who were instructed by the Court to bring in a special verdict. · ·The jury found the allegation true. The plaintiff moved the Court for judgment, which motion was granted, and judgment rendered for the amount demanded in the complaint.

The defendant sued out a writ of error.

GREENLEAF CLARK and BIGELOW & DALRYMPLE for Plaintiff in Error.

I.—School District No. 2 in the County of Anoka, had no power to incur the indebtedness for which this suit was brought.

When the mode of executing the powers granted to a corporation is expressly prescribed, no other mode can be adopted. *Angell & Ames on Corporations, Sec.* 111; *N. Y. Fireman's Ins. Co. vs. Ely,* 2 *Cowen,* 699; *Heard vs. Providence Ins. Co.,* 2 *Cranch,* 127; *Bank of Augusta vs. Earle,* 13 *Peters',* 519; *The Farmers' Loan and Trust Co. vs. Carroll,* 5 *Barb.,* 649; *Hart & Munson vs. The Regents of University,* 7 *Minn.,* 61.

And especially is this true of School Districts, which are *quasi* corporations with limited powers. *School District vs. Thompson,* 5 *Minn.,* 280.

And a corporation which is confined in its expenditures for a certain purpose to a particular fund actually received by it, cannot incur a debt for such purpose. *Barmester vs. Norris,* 8 *Eng. Law and Eq. R.,* 487, 490, 491; *McCulloch vs. Moss,* 5 *Denio,* 567, 579; *Silver vs. Cummings et al.,* 7 *Wend.,* 183; *Horton vs. Garrison,* 23 *Barb.,* 176; *Hart & Munson vs. The Regents, cited ante.*

The Trustees of School District No. 2, were empowered to build a school house only "out of the funds collected and paid to them for such purpose." *Comp. Stat., Ch.* 23, *Sec.* 70, *page* 360.

The Legislature very wisely withheld from the Trustees the power to run the District in debt.

Before the plaintiff below can maintain an action for the build-ing of the school house, he must show that the condition upon which the power of the Trustees to act in the premises depended, was complied with, *i. e.*, that the funds for the purpose were col-lected and paid. *See cases before cited.*

And even if that were shown, he could only resort for the col-lection of his claim to that particular fund, upon the credit of which he must be presumed to have contracted. *Hart & Mun-son vs. The Regents, cited ante.*

His remedy would then be by a suit brought specially to reach such fund.

It is clear that the Legislature did not confer upon the Trustees the power to incur indebtedness on the mere strength of the levy of a tax.

The language employed in *Sec. 70, page* 360, *Comp. Stat.*, is not capable of such a construction, and the section was obviously intended to prevent just such transactions as this.

II.—The promissory notes described in the complaint have no validity as against the School District.

Hence in any event the judgment below is erroneous, because it includes interest at three per cent. per month on the original consideration.

III.—Whatever may have been the rights of the defendant in error, (plaintiff below,) as against School District No. 2 in the County of Anoka, he is not entitled to recover against the defend-ant below in this action.

Between this corporation and the plaintiff below there is no privity of contract.

There is no principle known to law or equity by which one body corporate can be compelled to pay a debt contracted by an-other body corporate, unless there has been a valid promise to pay it, any more than there is that one natural person can be com-pelled to pay the debt of another natural person. *See Gould vs. School District*, 7 *Minn.*, 203.

The remedy of the plaintiff below, if he was entitled to any, (and unless he could maintain a personal action against the Trus-

tees, a point which we do not propose to consider,) was against the corporation with which he contracted and to which he gave the credit, and if he contracted upon the credit of any particular fund, then to enforce a collection out of that fund. The statute expressly saved the life of the corporation for the purpose of enforcing this claim. *Comp. Stat., Ch.* 17, *Sec.* 346, *page* 335 ; *see also Laws of* 1861, *page* 71, *Ch.* 11, *Sec.* 60, *and Laws of* 1862, *page* 28, *Ch.* 1, *Sec.* 37.

D. A. SECOMBE, for Defendant in Error.

I.—It fully appears from the allegations of the complaint which are not denied, that the original indebtedness of school district No. 2 was incurred within the power conferred by statute. *Revised Stat. Minn., Chap.* 29, *Secs.* 6 *and* 12; *Comp. Stat. Minn., p.* 358–60.

II.—It was a competent act of the trustees of the district to liquidate the amount of indebtedness, and to give written evidence of the amount found due to be paid at the time agreed upon. 4 *Barbour* 277 ; 23 *id,* 176.

III.—The plaintiff in error is the successor of and liable for the debts of said district No. 2. *Comp. Stat. p.* 616, *Secs.* 15 *and* 16 ; *Laws of* 1861, *Chap.* 11, *Secs.* 1, 2, 5, 7 *and* 9 ; *Laws of* 1862, *Chap.* 1, *Secs.* 1, 2 *and* 25; 7 *Minn. R.,* 210; 4 *Mass. R.* 329 ; 4 *Barb.* 122.

*By the Court*—McMILLAN, J.—The first question presented in this case for our determination is whether School District No. 2 of Anoka County, the original contracting party, had power to incur the indebtedness for which this action is brought.

The statute in force at the time of making the contract set forth in the complaint, in defining the powers of school district meetings, prescribes among other things that they shall have power " to designate a site for the district school house; to levy such tax (not exceeding six hundred dollars in any one year) on the taxable property in the district as the meeting shall deem sufficient

to purchase or lease a suitable site for a school house, and to build, hire or purchase such school house, and keep in repair and furnish the same with necessary fuel and appendages." *Comp. Stat., p.* 358, *sec.* 64, *subdiv.* 4, 5.

The same statute prescribes, among other things, as the duty of the *trustees:* "To purchase or lease a site for the district school house, as designated by a meeting of the district, and to build, hire or purchase, keep in repair and furnish such school house with necessary fuel and appendages out of the funds collected and paid to them for such purpose, and to have the custody and safe keeping of the district school house." *Comp. Stat., p.* 360, *sec.* 70, *subdiv.* 4.

It is evident from the sections cited that the directions to contract for the erection or lease of a school house must come from the district meeting, and in the powers conferred on that meeting there is no limitations as to the *amount* which shall be expended for the purposes designated, the only limitation being as to the amount of tax which may be levied *in any one year,* namely, six hundred dollars. With this restriction it is left to the inhabitants of the district to determine whether their necessities will require them to incur a greater amount of expense for the objects mentioned than can be defrayed in any one year. So far, therefore, as the district meeting is concerned, in our opinion, there is nothing in the statute preventing them from directing the trustees to incur a greater indebtedness than may be met by the tax levied for one year. Nor does the section prescribing the duties of the trustees, conflict with this view. It cannot be doubted that the power to lease a site for the erection of a school house is conferred on the trustees. It is not reasonable to suppose that it was intended by the statute to confine them to a single year, or the fraction of a year, as the term of the lease of a site upon which the district would incur the expense of erecting a school house, nor that the school district should be placed at the disadvantage of not being able to contract a lease by the terms of which the rent should be payable in installments, yet if the collection and possession of the funds is a condition precedent to the right of the trustees to

contract, they could not lease a school house or a site for a school for a term of years without paying in advance all the rent which would accrue during the term; nor could they contract a lease for any term of years by which the aggregate amount of rent reserved should exceed six hundred dollars. Indeed, the district could do nothing whatever in the accomplishment of the purposes for which it was organized until a tax was levied, assessed, collected and paid to the trustees. Such could not have been the intention of the statute. The restriction is general and applies alike to leasing and building—both are in the same category. We think, therefore, the effect of the statute is to limit the fund out of which payment for the purposes specified therein shall be made by the trustees, but it does not require that the funds shall be collected and paid to them before they can contract or purchase. We are of opinion, therefore, that the trustees, in this instance, had authority to incur the indebtedness sued upon, and postpone the payment of it to a future day, and to contract for interest as the consideration of the forbearance. As this action is brought upon the accounting between the plaintiff and the trustees of the school district, and the evidence of indebtedness given by them thereon, which is still in the hands of the promisee, it is not necessary to determine, nor are we to be understood as deciding, that the trustees have power to execute negotiable paper. The instruments, however, are valid between the parties, as a contract for forbearance and a promise to pay the amount specified, which will bind the successors of the original trustees, and upon which suit may be brought against the district. *Comp. Stat., page* 616, *Secs.* 15, 16; *Hart & Munson vs. Regents of the University, &c.,* 7 *Minn.,* 61. And this whether the trustees are in possession of the particular fund out of which the debt is payable or not. In New York under a statute similar to our own, in an action of assumpsit for work, labor and material in building a school house for a school district, when the work was done under a written contract between the plaintiff and the trustees of the school district, and the action was brought against the successors of the trustees who made the contract, it was held by the Court of Appeals, Justice

Bronson delivering the opinion, that the defendants were liable on the valid contract of their predecessors in office whether they had funds or not. *Williams vs. Keech and others*, 4 *Hill*, 168 ; *Stanton vs. Camp*, 4 *Barb.*, 277.

It remains to consider whether the action can be maintained against the defendant.

The corporation School District, No. 2, of the County of Anoka, which contracted this indebtedness, was formed under *Sec. 59, Ch.* 23, *Comp. Stat., page* 357. This act remained in force until its repeal by the act approved March 7, 1861. The latter act created each *township* organized, or that might thereafter be organized in any county, a school district and body corporate, and vested in it the title to all lands or other property then held or which might thereafter be acquired for school district purposes in any such town, and provided that the several districts should be subdivided into subdistricts creating each subdistrict a body corporate.

The 5th section of the act provided that the several school districts organized before the passage of the act, should be subdistricts of the town in which they were situated, and might be altered by the trustees of the district in the manner provided in the act. The 7th section prescribes the mode of formation and alteration of subdistricts.

By the operation of section 5 of the act, school district, No. 2, of Anoka County, the contracting party in this case became subdistrict No. 2, of the town of Anoka, the only change being that of its title. Under the provisions of section 7 of the act, by the action of the trustees of the district of the town of Anoka, it was united with subdistrict No. 1, of the same town, or as the complaint alleges "was merged in subdistrict No. 1," both subdistricts constituting subdistrict No. 1, of the town of Anoka. The act of 1861, under which the union of the two subdistricts took place, was repealed by the act approved March 6, 1862. By the last act each subdistrict organized, or set off but not organized, and each district thereafter organized, is declared to be a school district and body corporate, and is vested with the title to all land and

Robbins v. School District No. 1, Anoka County.

other property held at the passage of the act, or which may there-after be acquired for school district purposes in such district.

By the operation of the act of 1862, it will be perceived the style of "subdistrict No. 1, of the town of Anoka," was changed to "school district No. 1, of the county of Anoka," which is the present defendant, no other change being effected. The mere change of name does not affect the existence or character of the corporation, nor the rights of parties dealing with it. *Gould vs. Subdistrict No. 3, &c., 7 Minn.*, 203.

The only substantive change, therefore, in these districts was that effected by the action of the trustees under the act of 1862, in uniting the two subdistricts. We will consider the effect of this action. The allegation in the complaint is that subdistrict No. 2, was merged in subdistrict No. 1. This allegation is not denied. If it was the intention of the trustees to preserve the existence of subdistrict No. 1, and merely to incorporate subdistrict No. 2 into it, we apprehend their intention must prevail; we are to arrive at the effect of the action as to the creation of a new corporation, or the continuance of an old one by the intention of the trustees. As the action of the trustees is not in evidence be-fore us, the only way we can arrive at the intention is from the pleading, and as the fact is pleaded as a merger of subdistrict No. 2 in subdistrict No. 1, and is not denied, we think the effect of the action was to preserve the existence of subdistrict No. 1, and in-corporate subdistrict No. 2 into it.

"To ascertain whether a charter create a new corporation or merely continue the existence of an old one, we must look to its terms and give them a construction consistent with the legislative intent of the corporators."

But regarding the action of the trustees in the light of a con-solidation or union of both subdistricts, we think the effect in this case is the same. The identity or separate existence of each is lost and absorbed in the new corporation created by the consoli-dation. The property real and personal of each of the original subdistricts is vested in the subdistrict formed from them. The purposes of the new and old corporations are identical; the ter-

vol. x.—45

ritorial limits of the latter are the same as the former, and while the corporation thus formed must be conceded to be a new creation, it is not distinct from the old subdistricts, but must be regarded as a legislative merger of the old corporations into the new one. This is to be distinguished from a dissolution in law of the old corporations. By the latter at common law the personal estate of the corporation escheats to the State, and its realty reverts to the grantor or his heirs; by the former the new corporation succeeds to the rights and liabilities of the old one. *Angell & Ames on Corporations, Secs.* 779, 780.

The saving clause in section 60 of the act preserving the rights of districts, as well as parties dealing with them, whatever may be its extent, we do not think affects this case. The right of action is preserved, but the remedy must be had against the corporation as it now exists. The action, therefore, is properly brought.

As the indebtedness sued upon is payable out of a particular fund, the judgment must be executed out of the funds levied, assessed and collected by the trustees, or to be levied, assessed and collected by them for that purpose.

Judgment affirmed.