# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA,

## JULY TERM, 1866.

————•◦•————

JOHN SANBORN

*v.*

### SCHOOL DISTRICT No. 10, RICE COUNTY.

A book purporting to be the record of this School District, defendant, came from the possession of the present clerk of the district, who testified that he did not receive it from his predecessor in office, but did receive it from the plaintiff; that his predecessor was not present at the time; that he could not say the book is the record of the district: but it was identified by a former clerk of the district as the book of records kept by him as clerk; *Held*, a sufficient authentication, *prima facie.*

Under the *Comp. Stat.*, *chap.* 23, *page* 357, where the record of a school district meeting stated that "Pursuant to notice previously given in writing, agreeably to the provisions of statute, the legal voters of School District No. 10 met &c," the record is, *prima facie*, evidence of a regular notice.

It is not essential to the validity of an annual meeting of a School District, that the time and place of such annual meeting be fixed at the next preceding

annual meeting of such district. The powers of the district meeting are the same whether convened as an annual or special meeting, and if the fact of notice of the meeting appears upon the record, the proceedings will be sustained as a special meeting of the district.

When the statute of limitations has run against a debt of a School District, the trustees of such district have no authority under *Chap. 23 of the Comp. Stat.*, *pages* 357–61, to make a promise which will take the debt out of the statute, at least without express authority from the district; but that authority rests with the inhabitants of the district, in district meeting assembled.

It appeared from the records of the district, that at a certain district meeting, in response to a motion in the district meeting, J. S. submitted the following proposition in writing:

"*To the Inhabitants of School District No. 10 in Cannon City:*

In answer to the request made by several of the tax payers of the district for my best proposition for the adjustment of my claim against the district, I submit the following proposition, that is to say: I will take the sum of twelve hundred and fifty dollars ($1250,) in full satisfaction and discharge of said claim, the same being all the claim I hold against the district. Cannon City, March 4, 1861. JOHN SANBORN."

and the majority of the voters present voted to accept it, and voted to vote on the question by ballot, and proceeded to ballot: whole number of votes cast 47; 25 voting in favor of accepting the proposition, and 22 against; and at a subsequent meeting it was voted that the directors of said district be directed to draw the money in the county treasury, and pay it to J. S. to apply on the present indebtedness of the district. *Held:* that this is both an acknowledgment of, and promise to pay the debt, sufficient to take it out of the statute of limitations.

When the action of a School District-meeting constitutes in substance an acknowledgment or promise sufficient to take a debt out of the statute of limitations, and that action is made a matter of record, such record is a memorandum in writing within the meaning of *Sec. 73 of chap. 60 of the Comp. Stat.*, and such action of the district cannot be rescinded so as to bring the claim within the bar of the statute. Such acknowledgment must be made before the commencement of the action.

The Court refused to charge certain requests of counsel which were correct as abstract propositions, but not applicable to the case under consideration. *Held*, that such refusal was not ground for a new trial.

Where the vital question was one of ratification of the action of the trustees, by a School District, and the effect of a request submitted by counsel to the Court for instruction to the jury was that an unauthorized act of the trustees

could not be validated by ratification on the part of the district, *Held:* that the request so to charge was properly denied.

A mortgage given as collateral security for a note made by the trustees of a School District was void for want of authority in the mortgagors to execute it ; suit was brought against the district on an accounting involving the matters forming the consideration of the note; *Held:* that it was not error to refuse to charge that plaintiff could not maintain this action unless he had foreclosed the mortgage, or exhausted said security.

When a School District in district meeting with a knowledge of the facts ratified the act of its trustees by which an indebtedness was incurred on its behalf, the rights of the parties instantly changed, and at least as between the district and trustees, the former became solely liable, and the action ratifying the proceedings could not be rescinded by the district. *Subd. 6 of sec. 64, chap. 23, Comp. Stat., page 358,* does not extend to such a case.

Rule 34 of rules of the District Court is permissive, and, if the Court sees proper, it may refuse to entertain the request of counsel to charge specifically, unless the points are submitted within the time prescribed by the rule : but if the points are entertained it is a waiver of the rule, and it becomes the duty of the Court to charge upon the propositions submitted.

This action was commenced in the District Court for Rice County, on the 27th day of March, A. D. 1865. The complaint alleges substantially that the defendant being indebted to plaintiff for money, labor and material used in and about the construction of a school house for said district, on the 14th day of October, 1857, an accounting was had and the sum of $1146.66 was at such accounting found due the plaintiff; that as a memorandum, and evidence of such indebtedness the defendant by its trustees then executed to plaintiff its promissory note of that date in the words and figures following, viz:

"$1146.66        One year from date, we as trustees of School District No. 10, of Rice County and Territory of Minnesota, promise to pay John Sanborn, or bearer, the sum of one thousand one hundred and forty-six and 66–100 dollars, with interest at the rate of four per cent. per month until paid: for value received.

Dated Cannon City, Rice County this 14th day of October, 1857.

> WILLIAM NEEL,
> WILLIAM B. SANBORN,
> JOHN BAILER."

That the defendant had ratified the making of said note, and promised to pay said indebtedness; that on the 4th day of March, 1861, at a special meeting of said district, duly notified, called, and assembled, the plaintiff made the following proposition in writing:

"To the Inhabitants of School District No. 10, in Cannon City:

In answer to the request made by several of the tax payers of said district for my best proposition for the adjustment of my claim against the district, I submit the following proposition, that is to say: I will take the sum of twelve hundred and fifty dollars ($1250) in full satisfaction and discharge of said claim, the same being all the claim I hold against the district.

Cannon City, March 4th, 1861.

> JOHN SANBORN."

which proposition was then accepted by defendant and, by a resolution adopted at said meeting by the votes of a majority thereof, it agreed to pay the plaintiff the amount stated in said proposition.

The answer denies the indebtedness, admits that plaintiff made advances for the purpose of erecting the school house, but alleges that it has no knowledge of the amount advanced, and that said advances were made without the knowledge and consent of defendant. It alleges that prior to the commencement of said school house the district voted to levy a tax of $600 for the purpose of building the same, which sum it deemed sufficient for that purpose; that no other tax was levied,

Sanborn v. School District No. 10, Rice County.

or other sum voted for the building of said house; that during its construction the plaintiff was one of the trustees; that the trustees erected said house at a great and unauthorized expense, exceeding the amount voted for that purpose; that in exceeding that amount and in creating indebtedness for the erecting said school house, the trustees acted without authority. It denies the execution of the note by defendant, and alleges that the trustees by whom it was signed had no authority to execute the same so as to bind defendant; it denies any ratification of the execution of the note or any promise to pay the plaintiff; it admits the making of the proposition of the 4th of March, 1861, and that it was accepted by a vote of the voters of said district present, 25 voting for, and 22 against, but it denies that the meeting was legally called and notified, and alleges that such acceptance was without consideration, and was made on condition that plaintiff should abate $400 of his claim, which plaintiff refused to do; it alleges that the cause of action did not accrue within six years previous to the commencement of the action; that the note in suit was secured by mortgage and that the security had not been exhausted.

The reply put at issue the new matter in the answer.

At the trial the plaintiff called Wm. Lyon, the present clerk of said district, and proposed to prove by him the authenticity of a book alleged to be the records of the district at the time the cause of action is alleged to have accrued, who testified, "I did not receive the book from my predecessor in office, but did receive it from the plaintiff in this action; my predecessor was not present at the time the book was delivered to me by the plaintiff. I cannot say that the book is the record of the district." Plaintiff then called Thomas Bowles as a witness who testified, "I am a resident of School District No. 10, have been a resident of said district until within the

last four months since 1855." The book was now handed to the witness by plaintiff's counsel with the request to examine it and state if that was the book formerly kept by him as school district clerk. The defendant objected, the objection was overruled by the Court and the defendant excepted. The witness stated "I acted as clerk of the district for one year commencing March 13th, 1856, and ending March 13th 1857. I think this is the book I kept. They are the records of School District No. 10 * * * " The plaintiff then offered the book in evidence, which was objected to by the defendant upon the grounds, "1st, that the book was not shown to come from the proper custody, and the custody from which it did come was not accounted for; 2d, the witness was not a proper person to establish the authenticity of the book as the school district record; 3d, it does not appear that any of the meetings were legally and properly called." Further objection was also made to the introduction of the records of special meetings as follows: "1st. That it does not appear that the purpose for which the meetings were called was stated in the notice of meeting. 2d. That it does not appear that any notice of either meeting was given." The record of the meeting of October 5th, 1857, termed an annual meeting, was objected to "because it does not appear that the time and place of the meeting were fixed at the annual meeting previous thereto." The record of the meeting of March 4, 1861, was objected to on the further ground "that the statute of limitations having run against the claim in suit, the vote of the voters at a district meeting cannot take it out of the statute." These objections were all overruled by the Court, the defendant excepted and the record was received in evidence. The record of each meeting except those held by regular adjournment is preceded by a recital that "pursuant to notice previously given in writing, agreeably to the provisions of

statute the legal voters of School District No. 10 met," &c., and purports to be signed by the clerk of the district. At the meeting of March 13th 1856, the record, after showing the election of trustees, &c., among whom was plaintiff, proceeds, "voted that the said trustees proceed with as little delay as possible to erect or cause to be erected·a school house," &c., * * *

At a meeting of March 27, 1856, "voted that a tax of $600 be levied on the district for the purpose of building a school house: voted the trustees be empowered to raise money, if necessary, to erect a school house, for the District * * * * voted that the trustees do not expend to exceed $800 for the erection of said school house."

At a meeting of Oct. 6, 1856, plaintiff and others were elected trustees.

At a meeting of Oct. 13, 1856, the meeting approved the decision of the trustees "that it was inexpedient to proceed to the erection of a school house" but the trustees were required to ascertain what location for a school house could be procured and report. It was also "voted that the trustees be instructed to levy a tax of six hundred dollars on District No. 10, to be collected as soon as practicable.

At a meeting of Nov. 14, 1856, "voted that as the proprietors of Cannon City have offered in a written proposition now before the house to donate to the district lots 4, 5, 6, 7, 8 and 9, &c., upon which to erect a school house, provided that the school house be completed within one year from this date and it to cost not less than one thousand dollars * * * * it is hereby resolved that we accept this proposition and bind ourselves to do accordingly. Voted to postpone the collection of the $600 voted to be raised at our last annual meeting until next year." Voted to instruct the board to hire a sufficient amount of money to defray the ex-

penses of school and for the commencement of a school house * *."

At a meeting of——18, 1857, "voted unanimously to raise deficiencies by levying a tax on each male inhabitant of school district, between the ages of 21 and 55 years, of 50 cents.

At a meeting of Oct. 5, 1857, termed an annual meeting, "voted to adopt the report of the trustees of last year, said report having been previously read, the district assuming the report of said trustees." It appeared by the report that up to that time the school house had cost $1423.43; that the balance against the district was $920.80, and that there was also a balance due from the district to one Bailey Haines which was drawing interest at the rate of 36 per cent. per annum of $200, making the total balance $1,120.80, and there was due on the school house $881.36. It does not appear from the record, or otherwise, that the time or place of holding this meeting had been fixed at any previous meeting.

At a meeting of Oct. 25, 1858, a report of the trustees was made and accepted as amended by an auditing committee which showed a note due John Sanborn, principal $1,044.14, interest for one year at four per cent., $501.15.

At meetings of Nov. 27, 1860, and Feb. 5, 1861, it was voted that John Sanborn be requested to make a proposition upon what terms he would settle his claim.

At a meeting of March 4, 1861, plaintiff submitted the proposition set forth in the complaint, "voted to vote on the question by ballot; whole number of votes cast 47, 25 voting in favor of accepting the proposition and 22 against."

At a meeting of June 26, 1861, it was voted that the directors of said district be directed to draw the money in the County Treasury, to pay it to John Sanborn to apply on the present indebtedness of the district.

The witness Bowles testified among other things, "I was one of the trustees at the time of the accounting and there was found to be due over eleven hundred dollars at that time to the plaintiff. The school house cost about $1,400."

The plaintiff testified among other things. "House was mostly built in 1857. I attended to furnishing most of the money and material. I had an accounting with the trustees just before annual meeting. There was a memorandum made of the amount found due. It is the note produced in Court. The consideration of the note was money hired and material furnished. House cost about 1,400. Only one tax, except a poll tax of fifty cents on each voter, was assessed or collected: it was for $600; between $300 and $400 of this was collected: it was expended on the school house under my direction."

The note set out in the complaint was then received in evidence under objection by defendant and exception.

The plaintiff offered to introduce the record of a meeting held after the commencement of this action, at which a proposition of the plaintiff to compromise, and to take $800, and dismiss this action was accepted by a vote of the district, to which defendant objected, the objection was overruled by the Court, the testimony admitted and the defendant excepted. The record of a meeting held a week subsequent was also read in evidence, at which the district rescinded the previous vote and refused to accept plaintiff's said proposition. The plaintiff having rested his case the defendant moved for non-suit, and for judgment; which motion was denied and defendant excepted.

Wm. Sanborn, a witness for defendant, among other things testified that "the note is secured by mortgage on school lots which has never been foreclosed. John Bailer, witness for defendant, having testified that he was one of the trustees who succeeded John Sanborn, was asked by defendant: "Did

you have any authority from the district to execute the note in suit?" which was objected to by plaintiff; the objection was sustained, and the defendant excepted. The record of the mortgage from the school district by the trustees, collateral to the note in suit, to John Sanborn was offered in evidence; to this evidence the plaintiff objected, upon the ground that the trustees had no power to execute it. The objection was overruled, the evidence admitted, and plaintiff excepted. By the record this mortgage does not appear to have been discharged or foreclosed. No other evidence of authority to execute the mortgage was offered.

The Court charged the jury among other things to the effect, that the indebtedness contracted by the trustees for the building of the school house is not binding on the district unless their action was authorized by the district, or their acts were subsequently ratified by the district.

The case being closed, the defendant requested the Court to charge the jury as follows:

1. That if they find from the evidence that a fund was provided by a tax voted by the legal voters of the district for the purpose of building a school house, which was deemed sufficient by them for that purpose, and that such fund has been expended and exhausted by the trustees, and the cause of action in this case is an additional indebtedness incurred by the trustees after having expended the entire fund provided as aforesaid, and over and above said fund, the trustees had no authority to contract such indebtedness, and they must find for the defendant.

2. That although if the trustees had been in possession of a fund for the purpose of building a school house, or if such fund had been provided, and not reduced to possession and they had contracted an indebtedness not exceeding that fund the district might be liable, yet if after having exhausted that

fund they went on and contracted a further and additional indebtedness for the purpose of building a school house and for which no fund had been provided as by law required, the district is not liable for such additional indebtedness.

3. That even if it is not necessary that an express tax for the whole amount needed should be voted in advance, the voters of the district must have determined the amount which they would expend on a school house, and the district cannot be bound by the unlimited discretion of the trustees in incurring such expenditures, and any expenditure in excess of the amount so voted is void, and cannot be collected of the district.

4. That the trustees of a small and sparsely settled district cannot, without an express authority conferred upon them in district meeting by the voters of the district, expend fifteen hundred dollars in building a school house and bind the district by such expenditures.

5. That a *viva voce* vote of the voters of the district, in district meeting assembled, to accept a proposition of the plaintiff for settlement, is not such an acknowledgment or promise in writing, signed by the party to be charged thereby, as the statute contemplates.

6. That if they find from the evidence, that there was a mortgage or other security given to plaintiff by defendant as collateral security to the note in suit, and that the same remains a valid and subsisting security, and that the plaintiff has not foreclosed the same nor in any manner availed himself of or exhausted said security but still holds the same, he cannot maintain this action and they must find for the defendant.

7. That the action of a district meeting voting to ratify the action of its trustees or to levy a tax to pay for the school house, or to do any other act tending to ratify such action or

to recognize their acts as legal and binding, does not, if rescinded at an adjournment of the same meeting, or before the trustees or the creditors of the district have done any act or changed their position on the faith of such ratification, operate to bind the district and cannot be regarded as a ratification.

8. That if there was an inherent defect of power in the district under the circumstances to authorize the doing of the act at the time it was done, they cannot subsequently ratify it.

9. That a vote at a meeting held within a short period after a preceding one inconsistent with a vote at a previous one, although not expressly rescinding such previous vote, will be considered and is in law a recision thereof if passed before parties dealing with the district have changed their position on the faith of the previous vote.

The Court refused to charge each proposition separately, and the defendant excepted. The jury found a verdict for plaintiff, and judgment was entered thereon in his favor; from which judgment the defendant appeals to this Court.

COLE and CASE for Appellant.

BACHELDER and BUCKHAM for Respondent.

*By the Court.*—McMILLAN, J.—This action is brought to recover a sum of money alleged to have been found due to the plaintiff upon an accounting between the parties. Upon the trial of the cause, the plaintiff called Wm. Lyon, the present Clerk of the School District, defendant, and proposed to prove by him the authenticity of a book alleged to be the book of record of the district, at the time the cause of action is alleged to have accrued. The witness testified, "I did not receive the book from my predecessor in office, but did re-

ceive it from the plaintiff in this action; my predecessor was not present at the time the book was delivered to me by the plaintiff. I cannot say that the book is the record of the district." Without examining this witness farther, the plaintiff called Thomas Bowles as a witness, who testified, "I am a resident of School District No. 10, have been a resident of said district until within the last few months since 1855." The book was now handed to the witness by plaintiff's counsel with the request to examine it and state if that was the book formerly kept by him as school district clerk; to which defendant objected, and the objection was overruled and defendant excepted. The book purports to be a record—it comes from the custody of the present clerk, and is identified by Bowles a former clerk of the district, as the book of records kept by him as clerk. This is a sufficient authentication, *prima facie*. If it was not the record, the witness Lyon could have said so; he must know whether it is the record in his office, and it is evident it was. The plaintiff offered the book in evidence, which was objected to by the defendant—

1st. That the book was not shown to come from the proper custody, and the custody from which it did come was not accounted for.

2d. The witness was not a proper person to establish the authenticity of the book as the school district record.

3d. It does not appear that any of the meetings were legally and properly called.

The first two objections are already disposed of. The third therefore is to be considered, and in the consideration of this objection we may embrace all the objections to the record of specific meetings, which are substantially,

1. That it does not appear that the purpose for which the meetings were called was stated in the notice of meeting.

2.   That it does not appear that any notice of either meeting was given.

3.   It does not appear that the time and place of the meeting of October 5, 1857, termed an annual meeting, were fixed at the annual meeting previous thereto.   The question raised by the first two objections is a question as to the burthen of proof, not the necessity of giving a notice, or its essential requisite.

The statute under which this School District, defendant, was organized, in prescribing the meetings of the district, provides that an annual meeting shall be held at the time and place previously appointed, and at such annual meeting the time and place of holding the next annual meeting shall be fixed; but no further provision is made for an annual meeting in case of failure to designate the time and place at the last meeting.   It further provides that special meetings may be held whenever called by the trustees or any two of them, and all notices of annual or special meetings shall be in writing, signed by the trustees or clerk of the district, and shall state the object for which the meeting is called, and shall be posted up in three public places of the district at least six days previous to the time of holding such meeting.   *Comp. Stat. page* 359, *Sec.* 67.

It is further provided that "it shall be the duty of the clerk of such school district,

1.   To record the proceedings of his district in a book to be provided for that purpose by the district.

2.   To give notice of annual or special meetings," &c.
*Comp. Stat. page* 359, *Sec.* 68.

There is no other provision in the statute requiring any record of the notice of any meeting, or prescribing what shall be the evidence of such fact.   It is provided by *Sec.* 64, *page* 358, that "the inhabitants entitled to vote in such district, or any

portion of them not less than five in number when lawfully assembled in any district, in any district meeting, shall have power by a majority of the votes of those present," among other things, "2. To adjourn from time to time as occasion may require. * * * 4. To designate a site for the district school house. 5. To levy such tax (not exceeding six hundred dollars in any one year) on the taxable property in the district as the meeting shall deem sufficient to purchase or lease a suitable site for a school house, and to build, hire or purchase such school house, and keep in repair and furnish the same with necessary fuel and appendages. 6. To repeal, alter or modify their proceedings from time to time as occasion may require * * * 8. To designate the number of months a school shall be kept during the year, and when said district is organized as above provided, it shall be to all intents and purposes a body corporate, capable of suing and being sued, and fully competent to transact all business appertaining to schools and school houses in their own district, according to the provisions of this chapter."

Excluding from present consideration the further objection, subsequently noticed, to the admissibility of the record of the meetings of March 4, 1861, and subsequent thereto, the record of each of the other meetings, except those held by regular adjournment, recites the fact that "pursuant to notice previously given in writing, agreeable to the provisions of statute, the legal voters of School District No. 10, met" &c. If irrespective of the record of this character, the meeting having been held, the presumption would not be in favor of the regularity of the proceedings, under the present circumstances, we think, the clerk being required to give notice of the meetings, and to keep a record of the proceedings of his district in a book to be provided for the purpose, and no other mode of the record of the notice, or evidence of the same being prescribed by

statute, the record is *prima facie* evidence of a regular notice. *Doughty vs. Hope*, 3 *Denio*, 598; *Briggs vs. Murdock*, 13 *Pick.*, 306: 1 *Greenl. Ev., Sec.* 493; *Codman vs. Marston*, 10 *Mass.*, 150–1; *Ang. &. Ames on Corp., Sec.* 199. But it is objected that the record of the annual meeting of October 5, 1857, was incompetent "because it did not appear from the records, or otherwise, that the time or place of holding this meeting, had been fixed at any previous meeting;" and we are cited to the case of *Marchant vs. Langworthy* and others, 6 *Hill.* 646, as directly in point. That decision was made under the New York statute, which contains the same provisions with reference to annual meetings that our statute does, but it also contains a provision for an annual meeting if the time is not designated as specified. 1 *Rev. Stat. N. Y. 3d Ed. pp.* 541–2, *Secs.* 87–89.

Our statute contains no such provision, so that if the designation of the time at the preceding annual meeting is, under our statute, of the essence of the provision, no annual meeting can ever afterwards be held, in case of the failure to make such designation. While under the N. Y. statute the decision in *Marchant vs. Langworthy* may be altogether right, under the different provisions of our statute we do not regard the designation of the time by the annual meeting as intended by the legislature to be indispensable. But the powers of the district meeting are the same whether convened as an annual or special meeting, and the fact of notice appearing in this, as in the other cases, the meeting would be sustained as a special meeting of the district.

The record of March 4, 1861, was objected to, in addition to the general grounds urged to all the records, on the further ground that the statute of limitations having run against the claim in suit, the vote of the voters at a district meeting cannot take it out of the statute, which was overruled.

The same question was also raised by the motion for non-suit, and also by the fifth request to charge, submitted by the appellant, which was refused, and an exception taken to such refusal by the appellant.   Assuming for the present the valid-ity, originally, of the plaintiff's claim against the district, we think the evidence establishes both an acknowledgment of, and a promise to pay the debt, sufficient to take it out of the statute of limitations.   The corporation, in the case of school districts under *ch. 23 of the comp. stat.*, consists of the inhab-itants of the district, and possesses the corporate powers ex-pressly conferred by *subd. 8 of sec.* 64 of that chapter, and is "fully competent to transact all business appertaining to schools and school houses, within their district."   The trustees are officers of this corporation, and are the agents of the cor-poration, for the purposes, and to the extent prescribed in the statute, and no greater:   Their general duties are prescribed in *Sec.* 70 of the same chapter; among other things, "to purchase or lease a site for the district school house as desig-nated by a meeting of the district, and to build, hire or pur-chase, keep in repair, and furnish such school house with ne-cessary fuel and appendages, out of the funds collected and paid to them for such purpose, and to have the custody and safe keeping of the district school house."   *Subd.* 4 *Sec.* 70. There is no where any general power or duty conferred or im-posed on the trustees, to contract or be contracted with, nor re-quiring or authorizing them to act generally as the agents of the district.   On the contrary it is evident from the subdivision of the section cited, and from the whole tenor of the statute, that the trustees were limited and restricted in their powers, and that the control of the affairs of the district was to rest with the inhabitants.   In *Robbins vs. School District No.* 1 *of Anoka County,* 10 *Minn.* 340, the action of the trustees in con-tracting for the building was authorized by the district meet-

ing, and being so authorized, the statute, in the foregoing sub-division, it was held, authorized the trustees to contract for forbearance of the debt.    But in that instance there was a valid and subsisting indebtedness.    We do not think, however, that under the powers conferred by the statute upon the trustees, they have any authority whatever to make a promise or ac-knowledgment which will take a debt out of the statute of limitations, when the statute has run against it, at least, with-out express authority from the district, but that the power ex-ists somewhere in the corporation, there can be no doubt, and since the residue of the corporate power not vested in the trus-tees exists in the district, it must be capable of exercising it in the manner prescribed in the statute, that is, by the action of the inhabitants in meeting assembled, and that action is discovered by the records of the district.

From the records of the district it appears that at a meet-ing, February 5th, 1861, it was voted that John Sanborn be requested to make a proposition upon what terms he would settle his claim.    At the meeting held March 4, 1861, the plaintiff submitted the proposition set forth in the complaint as follows:

"To THE INHABITANTS OF SCHOOL DISTRICT No. 10, IN CAN-NON CITY:    In answer to the request made by several of the tax payers of the district for my best proposition for the adjustment of my claim against the district, I submit the following proposition, that is to say; I will take the sum of twelve hundred and fifty dollars ($1,250) in full satisfaction and discharge of said claim, the same being all the claim I hold against the district.

JOHN SANBORN.

Cannon City, March 4, 1861."

And the majority of voters present voted to accept it, and "*voted* to vote on the question by ballot, and proceeded to

ballot; whole number of votes cast 47; 25 voting in favor of accepting the proposition, and 22 against;" and at a meeting of "June 26, 1861, it was voted that the directors of said district be directed to draw the money in the County Treasury and pay it to John Sanborn to apply on the present indebtedness of the district." It would be difficult to find an instance where the acknowledgment of a debt is more distinctly made than in this case. The proposition from the plaintiff is in writing, and is a positive unconditional offer to the defendant to accept a sum certain in full payment of his claim, and expressly excludes the presumption of there being more than one claim to which reference could be made. The proposition is as distinctly accepted by a vote by ballot. But in addition to this it was subsequently voted that the directors of said district be directed to draw the money in the County Treasury, and pay it to John Sanborn to apply on the present indebtedness of the district. There is no reasonable doubt that the action of the district accepting his offer was intended as a concurrence in the proposition on their part, to be communicated to the plaintiff. The proposition had been requested at a previous meeting; *it was submitted by the plaintiff in response to a motion in the meeting;* it was received and acted upon in open assembly, and recorded upon the official register by the clerk of the district, whose attestation is upon the record; and a further direction to the trustees, to pay to the plaintiff on the indebtedness the money in the County Treasury, is made in open meeting.

The case at bar is clearly distinguishable from *Shaw and others vs. Stone and others,* 1 *Cush.* 243. In that case the question was whether a *contract* between a private corporation and another had been reduced to writing so as to prevent the admission of parol testimony as to the agreement. It appeared that G. S. & Co. were by a vote of the directors ap-

pointed the general agents in B. of the H. M. Company for selling and buying, and also for taking a general supervision and control of the affairs of the company, subject however to instructions from time to time from the directors. A committee was at the same time appointed to make arrangements with them for their compensation as agents. Subsequently the committee made a report which was accepted, making a recommendation exclusively with reference to the compensation to be allowed. The plaintiffs, assignees of the H. M. Co., offered certain parol testimony, which was objected to on the ground that the vote of the directors, and the subsequent acceptance of the report of the committee, constituted a contract in writing, which ought not to be altered or enlarged by parol evidence. The Court overruled the objection. Here it is not sought to establish a contract, but a mere acknowledgment, in some writing signed by the party to be charged. The object of the statute is to secure written evidence of the acknowledgment. The party to be charged here is the corporation ; the act of a majority in a lawful meeting is the act of the corporation; its acts may be proved in various ways, but its records are, as a general rule, the best evidence of its proceedings, being the *written* evidence of its action by its agents through whom alone it can act. When, therefore, the action of a corporation, school district, constitutes in substance an acknowledgment or promise sufficient to take a debt out of the statute of limitations, and that action is made a matter of record, such record we think is a memorandum in writing within the meaning of *Sec.* 73, *Ch.* 60 *of the Comp. Stat.* The rulings of the Court were correct. This being the case, it follows that this action of the district could not be rescinded so as to bring the claim again within the bar of the statute. 1 *Smith's Lea. Cas.* 875. *Baily vs. Grant,* 21 *Pick,* 323. *Mumford vs. Truman* 8 *Met.* 432. The acknowledgment herein

must be made before the commencement of the action; the record of the meeting subsequent to the commencement of this action was not admissible for the purpose of showing an acknowledgment. But we are unable to see that it could have injured the defendant in any manner, and we do not feel called upon to disturb the verdict on this ground. The defendant's counsel having called Wm. Sanborn, one of the trustees at the time of making the instrument sued on, asked him, "Did you have any authority to make the note in suit?" which was objected to by plaintiff and objection sustained, and defendant excepted. The instrument was not relied upon as a note in any sense, and it matters not here how the witness would have answered the question: it has already been determined by this Court that the trustees had the power to account under the circumstances, and give to the plaintiff a written memorandum of the indebtedness, which would bind the district; we think, therefore, this question was immaterial, and the exception must be overruled. *Robbins vs. School District No. 1 Anoka Co. cited ante.*

At the conclusion of the case the counsel for the defendant submitted several points which he desired the Court to give in charge to the jury. As to the first two requests, whatever may be their merits as abstract propositions, they are not applicable to this case, and the refusal of the Court to charge them is not ground for a new trial. The facts are established by the records of the district, and undisputed, that at the district meeting of Nov. 14, 1856, the trustees were authorized to erect a school house upon the site designated, to cost not less than $1,000; and there is nothing in the case, so far as we can discover, to show that the district at that, or any other time, provided a fund which they deemed sufficient for the purpose.

These requests are based upon a state of facts which the jury

would have no authority to find: they are therefore immaterial here. The third request submitted is as follows: that even if it is not necessary that an express tax for the whole amount needed should be voted in advance, the voters of the district must have determined the amount which they would expend on a school house, and the district cannot be bound by the unlimited discretion of the trustees in incurring such expenditure, and expenditure in excess of the amount so voted is void, and cannot be collected of the district. The Court had already charged the jury that the indebtedness contracted by the trustees for the building of the school house is not binding on the district, unless their action was authorized by the district, or their acts were subsequently ratified by the district.

That the trustees are limited by the amount directed by the district meeting to be expended for a school house, when so specified, is we think beyond doubt, and that in the absence of any ratification of the action of the trustees by the district, the district would not be liable, but that the action of the trustees may be ratified so as to bind the district, we have no doubt. The district, in district meeting, may determine any amount they see proper, for the erection of the school house, their power is not limited in this respect, but only as to the amount of tax they may levy in any one year to meet it; nor does the exercise of the authority to thus determine the amount, exhaust the power of the district; it is a general power in the corporation. *Robbins vs. School District No.* 1, *Anoka Co.*, 10 *Minn.*, 340. If a corporation ratify the unauthorized act of its agent, the ratification is equal to a previous authority, as in case of natural persons. *Ang. & Ames on Corp.*, *Sec.* 303. The vital question in this case was a question of ratification, and from the language of the request itself, and subsequent requests submitted at the same time,

especially in view of the charge previously given by the Court, we are satisfied that the effect would be to instruct the jury that the unauthorized act of the trustees could not be validated by ratification on the part of the district, and on this ground, we think, this and the fourth request were properly denied. The fifth request has already been disposed of. The sixth request was properly refused, under *Ch.* 23 *of the Comp. Stat.* The title to the land is in the district, not the trustees. *Comp. Stat. Ch.* 23, *Sec.* 64, *Subd.* 8. The trustees in the absence of authority could not mortgage the real estate of the district, and there is not an item of evidence to show any authority from the district, or that the district ever took any action with regard to it.

The instrument of record as a mortgage was void, and should not have been received in evidence, nor does it come within the terms of the act of 1860. *Sess. Laws* 1860, *page* 216.

The seventh request was properly denied: the indebtedness in question was for the erection of a school house for the district. To the extent of $1000, at least, the trustees had previous authority from the district, and for the balance were legally liable to the persons holding the claims in question; where the district, in district meeting, with a knowledge of the facts, ratified the acts of the trustees, by which the indebtedness was incurred on its behalf, the rights of the parties instantly changed, and at least as between the district and the trustees, the former became solely liable, and the action ratifying the proceedings of the trustees could not be rescinded; the 6*th subd. of sec.* 64, *ch.* 23, *Comp. Stat.*, *page* 358, does not extend to a case affecting vested private rights. *Bailey vs. Crane*, 21 *Pick.* 323; 1 *Smith's Lea. Cas.* 875; *Mumford vs. Freeman*, 8 *Minn.* 432.

The eighth request as an abstract proposition is correct, but

under the views we have expressed in the consideration of the third request must be entirely immaterial, since no inherent defect of power in the district to authorize the doing of the act at the time it was done  existed.   The ninth request is entirely disposed of by the conclusion we have arrived at in the seventh request.

The plaintiff's counsel urges that these requests were not presented to the Court, or requested to be given in charge until after the Judge had finished his instructions to the jury, therefore the Court was at liberty to disregard them under the 34th rule of the District Court.  The rule referred to is as follows: "The points on which a party desires the jury to be instructed must be furnished in writing to the Court before he commences his argument to the jury, or the same may be disregarded." This rule is permissive only, and if the Court sees proper, it may refuse to entertain the request of counsel to charge specifically, unless the points are submitted within the time prescribed by the rule; but if the points are entertained, it is a waiver of the rule, and it becomes the duty of the Court to charge upon the propositions submitted.   In this instance no objection was taken by the counsel for the respondent to the submission of the points in the Court below, and the Court does not seem to have acted under the rule, but charged specifically upon the points submitted, and allowed an exception to the charge upon each point.   The exceptions therefore must be disposed of on their merits.   We are not informed from the paper book in this case, whether there was a verdict in the case or not, or whether the appeal is from a judgment, or from an order denying a new trial; but as the plaintiff interposes no objection, we presume the appeal was regular, and as we see no error in the proceedings of the Court below for which a new trial should be granted, we think the order or judgment appealed from should be affirmed.