KANE vs. SCHOOL DISTRICT.

*May 16 — June 4, 1881.*

SCHOOL DISTRICTS. *(1) Power of director and clerk as to issuing orders. (2–4) Power of board as to contracting debts. (5) Power of board and district together in that respect.*

1. Under the statute found as §§ 34 and 42, chapter 23, Tay. Stats., the power of the director and clerk of a school district to issue orders upon the treasurer of the district is limited to cases where the money is due and immediately payable to the person in whose favor the order is issued, and where the funds for the payment of such debt have been apportioned to such district, or have been voted by the district for the payment thereof; and orders issued by such officers in the nature of contracts payable in the future, and chargeable upon taxes to be thereafter voted by the district, are not valid school orders.

2. Under the statute found as § 51, chapter 23, Tay. Stats., the power of the school-district board to purchase appendages to the school house at the expense of the district is limited by the restrictions imposed upon the district itself, in the matter of taxation, by subdivision 5, § 19 of the same chapter; and subdivision 8 of the latter section, which empowers the district, at its annual meeting, "to impose such tax as may be necessary to discharge any debts or liabilities of the district lawfully incurred," does not extend the power to tax for any specific purpose beyond the limitation of the power of taxation for such purpose fixed in other provisions of the act.

3. The power of the district board to contract for appendages to the school house, fuel, etc., as conferred by said section 51, is conditioned upon the contract being approved by the district; by allowing the account of the board therefor, or otherwise ratifying such contract, except in cases where the district has already provided a fund, and directed the board to purchase and pay for such appendages, or fuel, out of such fund.

4. The mere fact that seats purchased by the board have continued to be used in the school house, is no proof that the district has ratified the purchase, where it does not appear that the board ever presented any account for such seats to the district for allowance; and, where the purchase price has been paid, *without interest*, mere proof that the district has sanctioned such payment will not charge it with the payment of interest.

5. *Quære*, whether the district board and the annual meeting, both together, can bind the district by a contract payable out of the funds not intended to be raised by taxation *during the current year*, except as the statute authorizes the district to *borrow money* in certain cases and under certain limitations.

APPEAL from the Circuit Court for *Taylor* County.

This case is stated by Mr. Justice TAYLOR:

"This action was commenced by the plaintiff to recover a balance claimed to be due upon two school-district orders which are set out in the complaint. The complaint is in substance as follows: It alleges that the defendant is indebted to the plaintiff upon two certain school-district orders, one bearing date November 18, 1875, for the sum of $245.63, payable on or before the first day of January, 1877, with interest at the rate of ten per cent. per annum, payable to Hadley Bros. & Kane, duly issued and signed by A. E. Harder, clerk, and I. A. King, director; the other bearing date March 30, 1877,

for the sum of $98, payable on or before the first day of April, 1878, with interest at ten per cent. per annum, payable to said Hadley Bros. & Kane, duly issued and signed by Lewis Brown, clerk, and G. S. Phelps, director; and that both of said orders were duly assigned by the said Hadley Bros. & Kane to the plaintiff for value. It admits that $100 was paid on the first order, January 3, 1878, and $145.63, March 10, 1879; alleges that each order was presented to the district treasurer at the time it became due and payable, and payment thereof demanded, which was refused for want of funds; and prays judgment for $97.45 damages, and interest thereon from the 10th of March, 1879, at the rate of ten per cent. per annum.

"The answer of the school district, after a general denial, denies the issuing of any school-district orders as alleged in the complaint, alleges that the writings mentioned and set forth in the complaint, if they were ever issued, were issued in violation of law and without authority, and are void; and further denies all indebtedness to the plaintiff."

The action was tried in the circuit court, and, after hearing the evidence, that court entered a judgment of nonsuit and for costs in favor of defendant; from which the plaintiff appealed.

*J. K. Parish*, for the appellant.

The cause was submitted for the respondent on the brief of *S. A. Corning*.

TAYLOR, J. Treating the action as simply founded upon the alleged school-district orders, there can be no doubt as to the correctness of the judgment of the court below. There is no law which authorized the district board to issue such orders, or to bind the district by their provisions. The only authority we can find which authorizes the clerk of a school district to bind the district or authorize the payment by the treasurer, with the funds of the district, of orders drawn by

such clerk and director, is section 32, ch. 155, Laws of 1863 (Tay. Stats., 550, § 34), and section 40, ch. 155, Laws of 1863, as amended by section 2, ch. 111, Laws of 1866 (Tay. Stats., 551, § 42). The first section above referred to authorizes the director to countersign all orders legally drawn by the clerk upon the treasurer of the district; and the second section authorizes the clerk, and makes it his duty, " to draw orders on the treasurer of the district for moneys in the hands of such treasurer which have been apportioned to or raised by the district to be applied to the payment of the wages of legally-qualified teachers who have been employed by him, with the consent of the director or treasurer, to teach the school of said district, and also to draw orders on said treasurer for moneys in his hands to be disbursed for any purpose for which the same shall have been voted by the district agreeably to the provisions of section 19 of this chapter: *provided*, that each order shall designate the object for which, and the fund upon which, it is drawn, and shall be countersigned by the director: *and provided further*, that no order for the payment of teachers' wages shall be drawn, countersigned or paid, which is in favor of any person who has taught the school of said district when not holding a certificate of qualification from the county superintendent, or (in case of appeal) from the state superintendent." Section 136, ch. 155, Laws of 1863, as amended by section 9, ch. 111, Laws of 1866, makes it an offense punishable by fine for any director or clerk to issue or countersign any order for any purpose not authorized by law.

These provisions of the statute very clearly limit the power of the director and clerk of a school district to issue orders upon the treasurer of the district, to cases where the money is due and immediately payable to the person in whose favor the order is issued, and where the funds for the payment of such debt have been apportioned to such district, or have been voted by the district for the payment thereof. The inference to be drawn from these provisions of the statutes is, that it was not

the intention of the legislature to permit the clerk and director to issue any orders upon the treasurer to be paid out of funds to be raised by any future action of the district. The officers are not authorized to issue orders in the nature of contracts payable in the future, and chargeable upon taxes which might thereafter be voted by the district. The papers which are sued upon as orders binding the district, were simply void as orders. They were not drawn upon any fund in the hands of the treasurer, nor upon any fund voted by the district; and the treasurer of the district would not have been authorized to pay them out of any funds thereafter voted by the district, which might come to his hands, without the express direction of the district. The power given to the clerk and director to draw orders upon the treasurer is not a power to bind the district by contract. It is simply a power to direct the treasurer to pay an established debt against the district out of funds placed in his hands for that purpose. The plaintiff's action clearly failed, based upon the orders alone. But it is insisted that he ought to have recovered for the amount unpaid upon the contract made with the school-district board for the purchase of the seats for the school house from Hadley Bros. & Kane. This issue was, it seems, litigated without objection on the trial, and it is urged that the school-district board had authority, under the statute, to make the purchase, and bind the district by any contract they might make in regard to the same, and that therefore the plaintiff should have had a verdict in his favor upon the contract.

It is claimed that this authority is clearly given by section 49, ch. 155, Laws of 1863 (Tay. Stats., 555, § 51). This section reads as follows: "The district board shall provide the necessary appendages for the school house, and keep the same in good condition and repair during the time a school shall be taught therein, and they shall keep an accurate account of all expenses incurred by them, and present such account for allowance to the qualified voters at a regular district meeting, and

the amount of such account as allowed by such meeting may be assessed and collected in the same manner as other district taxes; but no such amount shall be allowed at a special district meeting unless the intention to present the same shall be specified in the notice of such meeting." The evidence shows that when the board made the first purchase for the sum of $245.63, no direction had been given to the district board upon the subject of purchasing seats, and that the district had directed the board to purchase seats and necessary appendages before the second purchase for $98 was made; but it nowhere appears that the district had voted to raise any money for such purchase at any time previous to the last purchase. There is nothing shown by the evidence which would enlarge the powers conferred upon the district board by the section above quoted in relation to the purchase of seats and appendages for the school house; and their authority to bind the district by contract for such seats must be found in said section, if found at all.

The power conferred by this section is very clearly not an absolute power. It is necessarily limited by the restrictions imposed upon the district itself, in the matter of taxation. The statute having prohibited the district from voting a tax beyond a specific amount for the purchase of fuel and appendages for the school house in any one year, it would seem to follow as a necessary sequence that the board could not bind the district for any sum in excess of that amount for such purchases, under the provisions of the section above quoted. It will be seen by an examination of section 19, ch. 155, Laws of 1863, as amended by chapter 111, Laws of 1866, chapter 162, Laws of 1868, and chapter 66, Laws of 1867 (Tay. Stats., 545, § 19, subd. 5), that the power of the district is restricted as to sums which may be raised by tax for the purchase of fuel and appendages for the school house. Subdivision 8 authorizes the district " to impose such tax as may be necessary to discharge any debts or liabilities of the district lawfully

incurred." This provision does not extend the power to tax the district beyond the limit fixed in the other provisions, when the amount of tax for a specific purpose is limited by the act. If the district board could lawfully bind the district in a larger sum for a specific purpose, such as building a school house or purchasing fuel and appendages therefor, than the district itself has power to raise by tax for such purposes, then the whole purpose of the statute to restrict such expenditures would be avoided, and the district could be compelled by indirection to raise a tax for such purposes, which would be absolutely unauthorized if voted directly by the people of the district.

But the section itself, in conferring the power upon the board to make purchases of appendages, etc., is conditional. No such purchases are to bind the district, or to compel it to levy a tax for the payment of the purchases made, until the account thereof shall be presented for allowance to the qualified voters of the district, at a regular district meeting; and when the account is allowed at such meeting, by the voters of the district, then the district becomes liable for the payment, and may levy a tax for that purpose, and not before. All purchases made by the board, under the section of the statute above cited, are clearly conditional purchases, and do not bind the district until the account for the same has been presented, and allowed by the voters of the district, or until the district has, by some other act or acts, clearly ratified the contract by the board made under the authority of such section. Persons who deal with the district board are bound to take notice of their powers; and when they sell property for the use of a school district to the district board, they are presumed to know that the district will not be bound to pay for such purchases until the account therefor has been presented to a regular district meeting, and allowed by the voters thereof; and that no tax can be levied in the future for such payment until after the account has been so allowed. A different question would

be presented if the district had expressly voted to raise a tax of a certain amount to pay for the appendages of a school house, and had also directed the board to purchase such appendages, and pay for the same out of the money so voted. A purchase made under such a state of facts would probably bind the district in all respects. The district having provided a fund, and directed the board to purchase and pay for the same out of such fund, power to fix the price would be implied, and an order given to the seller to be paid out of such fund would be a valid order, and authorize the district treasurer to pay the same out of the fund provided for that purpose. But purchases made with a knowledge that no funds have been voted for that purpose, and for the payment of which the seller must look to the future action of the district, must be deemed to have been made subject to the provisions of the section above cited, and with the understanding that the account for the same must be presented to and allowed by the district before it shall become liable for the payment thereof.

The evidence in the case shows that the district has retained the seats purchased, and has paid through its officers the contract price, but has refused to pay any interest on such price; that the account was never presented to or allowed by the voters of the district at any time; and that the only question ever presented to the voters upon the subject was, whether interest on the purchase price should be paid, and the district refused to pay.

It is urged that the district has ratified the contract made by the board, by retaining and using the seats; but we find no evidence in the case showing that the contract was ever presented to the voters of the district, or that they knew what the terms of it were. The proofs undoubtedly show that the district has sanctioned the payment of the purchase price without interest, but they do not show that it has ratified the contract made by the board; on the contrary they show it has refused to ratify it as to the interest, that being the only ques-

tion which has ever been submitted to it. The plaintiff has made no proofs which would justify a recovery upon a *quantum meruit*. He relies solely upon his contract made with the district board; and unless he has established the liability of the district upon such contract, he has no foundation for his action. We fail to find anything in the evidence which tends to show that the district was bound by the contract made by the district board. We entertain very grave doubts whether the board and voters of the district combined can make a valid contract binding the future resources of the district by a contract payable out of funds not intended to be voted or raised by taxation during the current year, except by taking such proceedings, in the particular cases authorized, as are necessary under the statute to make a loan in behalf of the district. If they can, then it would be wholly unnecessary to make any loans on behalf of the district, and the district might during any current year incur such an amount of indebtedness to be charged upon the funds of succeeding years, as to absorb all the taxes which could be lawfully collected in such years, and leave the district wholly without resources, except by repetition of the same system of mortgaging the future for the necessities of the present. Either this result would follow, or, if such liabilities were held to be debts lawfully incurred by the district, then the tax-payers of the district could be compelled to raise the necessary amount to pay the same, at the time agreed upon for their payment, notwithstanding such sum might exceed the limit fixed by the statutes for raising money by taxation for the purposes for which the debt was incurred. It seems to be the policy of the laws of this state to restrict the expenditures of the towns, cities, counties and school districts within certain specified limits; and in the case of school districts it has put a very effectual restraint upon such expenditures, by fixing a limit to the amount which can be lawfully collected from the tax-payers of the district for school purposes in any one year. To give proper force to

these legislative restrictions, it would seem necessary to restrain the district, as well as its officers, from contracting debts drawing interest, which can become a lawful charge upon the future resources thereof. Under the statutes, previous to the revision of 1878, a school district was duly authorized to borrow money to aid in building a school house. See sections 114 and 115, ch. 155, Laws of 1863. But under the Revised Statutes of 1878, a school district can now borrow money in two cases: *first*, where a special tax has been voted by the district for some definite purpose, the district may borrow the amount so voted, to be paid in not exceeding one year from the time the same is borrowed; and *second*, to aid in the construction of a school house, upon such time and rate of interest as the district shall direct. See sections 474 and 475, R. S.

The statute having designated the purposes for which the district may borrow money upon interest and charge the payment thereof, with interest, upon the tax-payers, it would seem to be a fair inference that in all other cases the district and its officers should be limited in their expenditures to the sums lawfully voted for taxes on the property of the district for the year in which the expenditure is made. To extend the authority to contract debts to be paid with interest in future years, would be an indirect evasion of the limited right to borrow money by the district. If a school district has the power to charge the property of the district for expenditures made by the district and its officers in former years, for the payment of which they had not levied a tax as provided by law, it would seem very clear that such charge can only be made by showing that the district has approved and ratified the former expenditure; and the only way such ratification and approval could be shown would be by a vote of the electors of the district at some regular meeting, approving the expenditure and directing payment of the same. The mere fact that the district officers had paid a portion of the expenditure out of the funds

of the district, would not be sufficient to bind the district for the unpaid balance.

The orders sued upon being unauthorized and void, and the plaintiff having failed to show that his claim for the seats purchased by the board was ever presented to the voters of the district at a district meeting for allowance or approval (except as to the interest, which the district refused to allow), and having failed to give any sufficient evidence that the district had ratified the contract made by the district board, the court properly ordered judgment in favor of the defendant upon the merits of the action.

In looking at the bill of exceptions, it would seem that the plaintiff failed to show any title in himself to the claim sued upon. The orders or contracts upon which the action was founded, do not appear to have been made payable to the plaintiff by any indorsement appearing thereon, although in the printed brief they appear to have been so indorsed. We do not, however, consider this as a ground for affirmance of the judgment, as the ownership does not seem to have been contested upon the trial or in the brief of the counsel for the respondent.

The claim that the court erred in the rejection of evidence offered to show that the seats purchased had been constantly used by the district since the purchase, can have no effect upon the rights of the district. That fact had been already proved by the witness Phelps, without objection; but, in our view of the case, that fact would not bind the district. The vendor could only bind the district by showing that the account had been presented at a regular meeting and approved, or by some other acts equivalent to such action on its part. If the evidence had shown that the terms of the contract had been made known to the voters of the district at some meeting thereof, and that they failed to·take any action thereon and afterwards authorized the district officers to make use of the

articles purchased, it would probably be bound by such action to pay the price agreed upon — certainly to pay the real value. In this case no such evidence was given or offered on the part of the plaintiff, nor was any evidence of the real value of the property offered. The plaintiff claimed to recover upon the contract alone.

*By the Court.*— The judgment of the circuit court is affirmed.