FARMERS AND MERCHANTS' NATIONAL BANK OF VALLEY CITY, D. T., Appellant, *v.* SCHOOL DISTRICT No. 53, Respondent.

**1. Municipal Corporations — School Districts — Powers.**

School districts being special statutory creations, have only such implied powers as are necessary to accomplish the purposes of their existence.

**2. Same — Warrants, Validity.**

Where the statute, § 29, subd. 4, chap. 14, L.1879, required that the voters of a school district should select a site for a school-house, and the district board, without this having first been done, selected it, built a house and issued warrants therefor without the authority or ratification of the voters, *held,* the warrants were void.

**3. Same — Exceeding Revenue.**

Where by § 29, subd. 5, chap. 14, L. 1879, there was a restriction on the amount of revenue a school district might raise in any one year, and a board in issuing certain warrants payable immediately, exceeded this limit, *held,* the warrants were void.

**4. Same — Estoppel.**

A school district, in an action against it on its warrants, will be permitted to defend on the ground that the warrants were issued in excess of its powers.

**5. Same — Rights and Duties of Purchasers of Warrants.**

Persons purchasing obligations apparently issued by municipal corporations must see that the powers of the corporation have not been exceeded.

(Argued May 13, 1887; affirmed May 25, 1888; opinion filed June 3, 1889.)

APPEAL from the district court, Barnes county; Hon. W. H. Francis, Judge.

*J. W. Scott, White & Hewit* and *C. K. Davis,* for appellant.

The question of title to the land on which the building is situated is not a proper issue. If it were, the burden is on the respondent to show that the. land built on is not the land furnished by the district, which it has not done. Todd v. Greenwood, 40 Mich. 294.

If the land did not belong to the district, the contractors were not in fault and cannot be made to bear the loss. Laws 1879, chap. 14, § 57; Ferree v. Sixth W. S. Dist., 76 Pa. St. 376.

The lack of authority to issue these orders is not raised by the pleadings and not in the case. In any event the *onus* would be on respondent to show affirmatively that the power did not exist.

The authority is derived from the law of 1879 and 1881. See Laws 1879, chap. 14, §§ 39, 44, 52, 56.

Each order expresses on its face the purpose for which it was issued and is drawn on a fund recognized by the statute. Having authority to issue orders, *prima facie,* they are valid; any defense to them must be pleaded and proved. Dan'l, Neg. Inst., § 31; Commissioners v. Day, 19 Ind. 451; Clark v. City, 19 Ia. 199 ; 1 Dill. Mun. Corp., §§ 501–2; Burroughs, Pub. Sec. 638 ; Wall v. County, 103 U. S. 74, 77 ; Mayor v. Roy, 19 Wall. 468, 480.

It is claimed the district was restricted in the issuance of orders to the amount that could be raised by the tax of any one year. Laws 1879, chap. 14, §§ 29, 56. This is not by any means a limitation of the value of a building to be built. Sections 29, 39, 44, 52 and 56 must be construed together. Section 44 contains no

limitation as to the class of orders to be drawn, and gives the power to draw orders payable in future, bearing interest from the date of presentation. The case of Kane v. District, 9 N. W. Rep. 459 (52 Wis. 502), cited, is under a law very different from ours. The court in that case refers to sections 34, 42, ch. 23, Taylor's Statutes, pp. 550, 551, and section 51, p. 555. By these sections the power to issue orders is restricted to money in the hands of the treasurer. In Wisconsin there is also a distinct provision for borrowing needed funds.

The case of Robbins v. School District, 10 Minn. 268, is decisive of this question. That case construes our sections 29 and 56. These sections came from that state after this construction. See also Regents v. Hunt, 7 Gil. 45; Mullarky v. Town, 19 Ia. 21; City v. Corwith, 48 Ill. 423; Madison v. Watertown, 5 Wis. 173; Clark v. School District, 3 R. I. 199; Mills v. Gleason, 11 Wis. 470, 491; Wall v. County, *supra;* Mayor v. Ray, *supra;* Bank v. Town, 7 Ohio, 354.

But even were the orders executed without authority, it is proven they were given in payment of the building and furniture in accordance with the terms of the contract, and were afterward accepted and used by the district, they must, therefore, pay the orders. Mayor v. Ray, *supra;* Bicknell v. Widner, 73 Ind. 501-5; Greene's Brice's *Ultra Vires,* 724; Wallis v. Johnson, 75 Ind. 368; Story, Agency, §§ 255-6; Herman, Est. 1218, 1367; Mills v. Gleason, *supra;* 2 Smith, Lead. Cas. 459, i; 1 Dill. Mun. Corp., § 537 (3d ed.).

*F. H. Remington,* for respondent.

The primary object of warrants is not to provide a means for borrowing money, but to afford a method of drawing it from the treasury and furnishing the treasurer vouchers for its payment. They are not negotiable instruments and purchasers take them subject to all defenses. Dill. Mun. Corp., §§ 487, 488, 503, 504, 961; Clark v. Des Moines, 19 Ia. 199; Scheffield v. Andrus, 56 Ind. 157; School District v. Stough, 4 Neb. 357; National St. Bank v. Ind. Dist., 39 Ia. 490; Field, *Ultra Vires,* 442.

At the time these warrants were issued there were also issued five others of $500 each, transferred to another party and still out-

standing, making in all $6,000 for building and furnishing a school-house. The assessed valuation of the district at the time was $18,305. The inhabitants of the district did not direct their issue, nor the making of the contract; neither did they designate a site for the school-house.

Under these circumstances there was no authority to issue the warrants. The district is to be held strictly within its powers. School District v. School District, 11 N. W. Rep. 311; Independent School v. Stone, 106 U. S. 9; Gehling v. School Dist., 4 N. W. Rep. 1023; Wolf v. Independent School Dist., 1 id. 695; School Dist. v. Thompson, 5 Minn. (Gil.) 221; Dill., § 21; Hopper v. Town, 8 Fed. Rep. 777; Clark v. Des Moines, and Field, *Ultra Vires, supra;* Treadway v..Schnauber, 1 Dak. 236, 248.

Persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract. Dill., § 447; Anthony v. County, 101 U. S. 1005; Union School v. First Nat. Bk., 2 N. E. Rep. 194; Wallis v. Johnson, 75 Ind. 368; State v. Commissioners, 25 N. W. Rep. 91.

The amount that the district may raise by taxation, Laws 1879, chap. 14, §§ 29, 56, is restricted, as in Wisconsin. The supreme court of that state, under a similar statute, in Kane v. School Dist., 52 Wis. 502, 9 N. W. Rep. 459, held as we contend. See, also, School District v. Stough, 4 Neb. 357.

There seems to be some conflict between the case of Robbins v. School District, 10 Minn. (Gil.) 268, and the Wisconsin and Nebraska cases, but however that may be, the case at bar does not come within the Minnesota rule, as an examination will disclose.

The mere fact of using some of the property is no proof of ratification. Kane v. School District, *supra;* Johnson v. School District, 67 Mo. 319.

Neither can the doctrine of estoppel have any application to this case. Dill. Mun. Corp., §§ 457, 503, 504; Union School v. First Nat. Bank, *supra;* Clark v. City, *supra;* Field, *Ultra Vires,* 442; Cummins v. City, 79 Ind. 491, 497.

SPENCER, J.   This is an appeal from a judgment dismissing the complaint on the merits.   The action was brought to enforce the

payment of certain school warrants alleged to have been issued by the defendant through its school board. A jury having been waived, the cause was tried by the court, and findings of fact made that the inhabitants of the district did not direct the making of or make the contract under which the school-house was erected, did not consent to it, did not select or authorize the selection of the site upon which it was erected, and had never in any way ratified the acts of the school board in issuing such warrants or constructing such school-house; and, as matters of law, that such warrants were issued without authority of law, and were fraudulent and void. Judgment upon such findings was duly entered in favor of the defendant, and the plaintiff appealed.

Upon a careful examination of the facts in this case, and the law of this territory defining how and under what circumstances school districts and school boards may erect school-houses, and issue orders or warrants binding upon the districts in payment thereof, we are of opinion that the orders upon which this action was brought are invalid, and that the plaintiff is not entitled to recover.

The defendant was organized, if ever, under and in pursuance of chapter 14 of the Laws of 1879. By section 29 of said chapter, subdivision 4, it is provided that the inhabitants qualified to vote at a school-district meeting, lawfully assembled, shall have power to designate by vote a site for a district school-house; and, by subdivision 5 of said section, to vote a tax annually, not exceeding 1%, on the taxable property in the district, as the meeting shall deem sufficient, to purchase or lease a site for a school building. This section, and the subdivisions referred to, embrace all the law of this territory upon the subject of selecting sites for school-houses for the several districts. By section 56 of said chapter 14 it is made the duty of the district board of such school district "to purchase or lease such site for a school-house as shall have been designated by the voters at a district meeting, in the corporate name thereof, and to build such school-house as the voters of the district in a district meeting shall have agreed upon, out of the funds provided for that purpose."

School districts are corporations created for special purposes, and have only such powers as are specially granted by legislative

enactment, and those that are necessarily implied to accomplish the objects for which they are created. The specification of these powers by the statute under which they are organized restrains them from the exercise of other powers than those granted, and such as must be implied to enable them to effect the object of the grant, and operates to restrain them from the exercise of other powers, and, in the discharge of their duties and the exercise of the powers granted, they are governed and restrained by the provisions of the law under which they are created. When the law specially defines their powers, the legal presumption is that they are prohibited from the exercise of any others than those absolutely essential to enable them to accomplish the purposes of the grant. People v. Insurance Co., 15 Johns. 383 ; Insurance Co. v. Ely, 2 Cow. 699; School Dist. v. Stone, 106 U. S. 183, 1 Sup. Ct. Rep. 84; School Dist. v. Thompson, 5 Minn. 280 (Gil. 221).

Under this interpretation of the law upon this subject, what powers had this school district under the statute aforesaid? The inhabitants of the district qualified to vote at a school meeting, when lawfully assembled for that purpose, had the right and power to select a site for a school-house, and to agree upon such plans as they could for a school building, and provide funds within the limits fixed by the legislature for purchasing or leasing such site, and the erection of such school-house. This law also provides for the election by the inhabitants of such school district of a board of officers, and specifies the duties of each. Such officers, as a district board, are to purchase or lease such site for a school-house " as shall have been designated by the voters at a district meeting." From the provisions of this statute it is very clear that the intent of the legislature was that the inhabitants — the legal voters of the school district, as contradistinguished from the district board — should alone have the power and right to select a site for a school-house, and that until they had exercised that right the district board were powerless in the premises ; else it would not have used the language: " The district shall purchase or lease such site as shall have been designated by the voters at a district meeting, and erect such school-house as the voters of the district in a district meeting shall have agreed upon." This is

the reasonable and natural construction of the statute, and the only one which will give effect to all its provisions.   The site having been selected, and the plan of school-house agreed upon, then, and not until then, did it become the duty or could the district board exercise legally the right to purchase a site or erect a school-house.   The prime object of the creation of the district board was to enable the district to carry out the wishes of the inhabitants of the district as expressed at its meetings, and to consummate such bargains for the purchase of a school-house site and the building of a school-house as the legal voters of the district should direct. The statute does not mention any instance in which the district board may select a site for the school-house or erect the school building, except upon the sanction of the voters of the district and their effort to arrogate to themselves the powers conferred upon the inhabitants of the district was without the shadow of legal right or authority.   The evidence shows, and it is found as a fact by the trial court, that the inhabitants of the district did not designate a site for a school-house, did not direct the making of the contract for the erection of the school building, or the issuance of said warrants, nor authorize or ratify said transaction in any way ; and it is found as a fact, and is undisputed, that the school-house in question was situated upon land to which the defendant never had any title, nor the right to occupy it; and hence they do not own the school-house, and would not if they paid the warrants, and have not the power to ratify these illegal acts of the school board.

We have not been referred to any law giving the district boards power to select sites for school-houses, nor have we been able to find any such law, after diligent search.   The powers of the district board are enumerated in sections 59 to 64, inclusive, of chapter 14, Laws 1879, and in none of them, or elsewhere, is there any provision conferring upon the district board, in any contingency, any authority to create obligations against the district for building school-houses or purchasing sites.   Section 62 empowers the district board to provide the necessary appendages for the school-house during the time school is taught there, but the same are to be presented and allowed, if reasonable, at the regular district meeting.   Section 39 provides that the director of the school dis-

trict shall sign orders drawn by the clerk, authorized by the district meeting or by the district board, upon the treasurer for moneys collected or received by him; and section 44, that the clerk shall draw all warrants or orders for the payment of money for teachers' wages, or any other purposes legally ordered by the school board, or by the voters at a district meeting. We have seen that the district board may direct orders to be drawn to carry out the will of the school district when ascertained. They may also, undoubtedly, direct orders to be drawn in payment of teachers' wages already earned, and in payment for appendages, after the bills for the same have been duly presented at a district meeting, and allowed. Items of this character may undoubtedly be allowed by the district, even though there be at the time. no funds in the treasury to pay them. Being audited and presented, if there are not funds sufficient to pay, the law provides they shall draw interest. It is apparent that this is the intent the legislature had in making the law. This construction of the statute gives effect to all its provisions. It enables school sites to be selected, school buildings to be constructed, teachers to be employed, and all the machinery necessary for successfully carrying on these institutions of learning to be acquired, and leaves it to the inhabitants of the district, who are to bear the burdens of maintaining the system, to determine how, under the law, the interests of the common schools can be best fostered and preserved. The fact that the legislature has in no place, nor under any circumstances, clothed the district board with power to create debts that should be binding obligations upon the district, except by and with the consent of the inhabitants of the district, is sufficient evidence that it supposed the authority to incur obligations would be more wisely exercised by those who had them to pay than by a board which peradventure might in that regard be moved by some ulterior purpose. In any event, the legislature, within the statutory limitations, has left this matter entirely with the inhabitants of the district, and empowered the district board to act only in consonance with the will of the voters of the district, as expressed at the district meetings. The district board in issuing these orders acted without any authority whatever, and such orders are, therefore, invalid for any purpose.

Again, by the statutes mentioned, the school districts are restricted in the amount of obligations they may incur, to be paid in any one year, to 1½% on the taxable property of the district. The taxable property of this district was $18,305, and each of the orders sued upon exceeded the statutory limit, and was payable immediately. We think it was the purpose of the legislature to restrict, within the limits specified by the statute, the amount of actual expenditures which could be made by the district in any one year. Any other construction of this statute would be equivalent to holding that it has no force or effect, and that school districts or school boards may incur any amount of indebtedness, and bind the district with its immediate payment. In order to give effect to these statutory restrictions, it is essential that school districts and their officers shall be restricted from contracting debts to the limit of the law, and in this view we are supported by Kane v. School District, 52 Wis. 502, 9 N. W. Rep. 459, where we find this language applied to a statute very similar to the one we are considering : " It seems to be the policy of the laws of this state to restrict the expenditures  *  *  * by fixing a limit to the amount which can be lawfully collected from the tax payers of the district for school purposes in any one year. To give proper force to these legislative restrictions, it would seem necessary to restrain the district as well as its officers from contracting debts drawing interest which can become a lawful charge upon the future resources thereof." But we are not called upon to go so far in the case at bar. The question here is whether the district had power to incur liabilities not only greatly in excess of the statutory limit, but to bind the district with their immediate payment. This is a different question from that presented in Robbins v. School District No. 1, 10 Minn. 340 (Gil. 268). But that case rather sustains the defendant's position here than otherwise. It holds merely that the inhabitants of the district, at a district meeting, could incur a greater indebtedness to be paid in the future than could be met by the tax levied for one year ; thus deciding, substantially, that the district could not incur a debt to be paid in one year greater than the amount to be collected by levy and tax for such year according to the terms of the statute. In the case at bar, assuming that the district had authorized the

issuing of these orders, they would, under the reasoning in 10 Minn., have been void, because they created an obligation against the district, payable immediately, greater than could be realized from any tax they were empowered to levy for that year. They thus transcended their authority, and exercised powers which the statute not only did not confer upon them, but absolutely prohibited the exercise of by them. We, therefore, hold that these warrants are invalid on both grounds, viz.: *First*, that they were issued without the knowledge or consent of the district, and before the inhabitants thereof had, at a district meeting, selected a site for a school-house, and agreed upon a school building; *second*, because they exceeded $1\frac{1}{2}\%$ of the taxable property of the district,— the maximum that could be levied and collected in any one year,— and were payable immediately, thus creating a present liability which was beyond the power of the school district or school board to incur. There is no doubt of the right of the corporation in such a case as this to set up its lack of power, under the law by which it is created, to enter into a contract sought to be enforced against. Clark v. Des Moines, 19 Ia. 199. And it is equally well settled that persons dealing with municipal corporations, or purchasing obligations apparently issued by them, must inquire into the powers of the corporations or their officers to make the contract, and when the want of power to make the contract is apparent from the charter or law under which the corporation is organized, or the obligations beyond the scope of the corporate power of the corporation, it is void and cannot be enforced. Anthony v. County of Jasper, 101 U. S. 693; Clark v. Des Moines, *supra* ; Marsh v. Fulton Co., 10 Wall. 676; Hodges v. Buffalo, 2 Denio, 110 ; McCoy v. Briant, 53 Cal. 247.

The conclusion we have arrived at renders an examination of the other alleged errors unnecessary. For the reasons stated, we are of opinion that the judgment of the court below was correct, and should be affirmed. Judgment affirmed ; all the justices concurring.