CAPITAL BANK OF ST. PAUL, Plaintiff and Appellant, *v.* SCHOOL DISTRICT No. 53, Barnes County, D. T., Defendant and Respondent.

1.  **School Districts — Contract Ultra Vires — Ratification.**

    A contract, authorized by the inhabitants of a school district at a district meeting, to build a school house for an amount in excess of funds on hand or subject to collection for that purpose, and the amount that could be realized from the maximum tax which could be levied by the inhabitants for the current year and used for that purpose, is void.. Therefore, *held*, that such a contract, void because the district board had no authority to make it, could not be made binding upon the district by subsequent ratification by the inhabitants.    Whether there was sufficient evidence of such ratification not decided.

2.  **Same — Receipt of Fruits of Contract Creates No Liability.**

    Such contract being impliedly prohibited by statute, the receipt by the district of the fruits thereof creates no liability either under the contract or for the value received.

3.  **Same — Warrant Creates No New Liability.**

    A warrant creates no greater liability than the debt it represents,

whether in the hands of the original party or of a purchaser before maturity and for value.

(Opinion Filed November 29, 1890.)

*A*PPEAL from district court, Stutsman county; Hon. RODERICK ROSE, Judge.

*White & Hewit* and *Bartlett Tripp*, for appellant.

Mr. Tripp argued as follows: The court below directed the verdict as appears from the abstract upon the ground that "the district exceeded its authority in issuing orders for a greater amount than could be raised by the levy of a tax in one year," and was governed no doubt by the language of the supreme court of Dakota Territory in Farmers & Merchants Nat. Bank v. School District No. 53, 42 N. W. 767. One of the essential distinctions between that case and the case at bar, which seems to have been overlooked by the lower court, or which was deemed by it not to apply, was "that the inhabitants of the district did not direct the making of or make the contract, and had never in any way ratified the acts of the school board in issuing such warrants." In this case we say there was evidence of ratification on the part of the inhabitants of the district of the acts of the board. The court below seems to have been of the opinion that such evidence was immaterial, the inference being from the act of directing the verdict, that the learned judge was of the opinion that the district could not ratify such unauthorized acts of the board; that the district could not do indirectly what it had not power to do directly. We think the court below has misconstrued and extended the meaning of the language used by the court in Farmers & Merchants Nat. Bank v. School District No. 53 *supra*. It is true that a hasty reading of this decision alone would seem to give the impression that the court intended to hold in all cases, where the warrants or orders exceeded the amount of the tax levy of that year, they were absolutely void. This the court did not and could not intend to hold. The language of the court must be applied to the facts of that case. What was in fact determined in that case, and how far it is authority in the case at bar can best be determined by an examination of the companion case submitted with it at

the same time and the opinion in which is written by the same judge, to-wit: The Capital Bank of St. Paul v. School District No. 85, 42 N. W. R. 774. In this last case the supreme court says: "they expended more than could legally have been collected by tax on the property of the district in one year;" yet affirms a judgment against the district for the full amount of the warrants and interest, while in the case against district 53, where the board had done the same thing, the court holds the warrants void, and affirms a judgment in favor of the district. The only difference between the two cases so far as this question is involved was, that in the former case the action of the board was ratified, in the latter it was not. The courts in such case, because of the action of the inhabitants in ratifying such contract, will construe it as one to be paid out of the revenues from year to year to be obtained under the statutes providing for and limiting taxation. The territorial supreme court reached the conclusion that the district may make a contract — at least by ratification — incurring a liability greater than can be provided for by the taxation of the year in which it is made. Applying the results of that decision to the facts of this case it is decisive of it. We say there was abundant evidence tending to show that the district had ratified the acts of the district board in building this house and issuing these orders. See, also, Sullivan v. School District 39, 18 Pac. R. (Kans.) 287; Everts v. District Township Rose Grove, 41 N. W. 478; Andrews *et al* v. School District No. 4, 33 N. W. 217; Sherman *et al* v. Fitch, 98 Mass. 59; City of Conyers v. Kirk *et al*, 3 S. E. Rep. (Ga.) 442; Fisher *et al* v. Inhab. School District No. 17, 58 Mass. 496; Keyser v. School District, 35 N. H. 477; Kimball v. School District, 28 Vt. 8; Jordan v. School District, 33 Me. 170; Coney v. Somerset, 44 N. Y. S. 445; Banks v. Albany, 92 N. Y. 363; Read v. Plattsmouth, 107 U. S. 568; Corwin v. Wallace, 17 Iowa 374; Humphrey v. Association, 50 Iowa, 607; Pinches v. Church, 55 Ct. 183; Brown v. Atchison, 17 Pac. R. 465.

Again, the school district having accepted the fruits of the contract, and thereby having made the contract its own, will not be heard to say that it had no power to make such contract and is not bound thereby. Corporations neither private nor muni-

cipal are longer permitted to use the doctrine of *ultra vires* as
a sword, but only as a shield in defense of their corporate rights.
I think it may be safely said from a review of the modern decis-
ions of the courts that the line of distinction is now well drawn
between contracts made without or in excess of authority, and
those declared to be illegal or expressly prohibited by statute.
The doctrine of *ultra vires* was at first permitted to be set up
by or against corporations upon the theory that public policy
demanded that these artificial persons should be kept strictly
within the limits of the powers granted them; it was soon found
however that this rule worked a great hardship to parties deal-
ing with such persons in ignorance of their chartered powers,
and that the interests of the people would be best subserved by
estopping them from denying their power or the authority of
their agents to make such contracts, the same as in case of indi-
viduals, leaving the government to withdraw or annul their
charter in case of its violation, and no good reason would seem
to exist why a corporation should be permitted to say that its
agent, who made the contract had no authority so to do, while
it knowingly and willingly accepts its results and retains its
proceeds, while an individual, who under such circumstances has
ratified the unauthorized act of his agent is held liable as prin-
cipal to the same extent as if it had been made by himself. I
think the courts have so far receded from the position originally
taken on this question that it may be safely said they are quite
unanimous now in not permitting a corporation, which has re-
ceived and retained the benefit of an unauthorized contract,
unless it be a contract *malum in se*, to retain the benefits of such
contract and successfully interpose the plea of *ultra vires*; and
I may further say with equal safety that the great weight of
authority now denies to the corporation, in case of an executed
contract which is neither *malum in se* nor *malum prohibitum*,
the right to retain its proceeds and interpose this plea when
sued upon the contract, and that the few remaining courts which
still deny the right to sue upon the contract permit a recovery
as for money had and received or some similar action. Bank of
Augusta v. Earle 13, Pet. 519; Zabriskie v. Ry. Co. 23 How. 391;
Ry. Co. v. McCarthy, 96 U. S. 258; Hitchcock v. Galveston, 96 U.

S. 341; Gold Mining Co. v. Nat. Bk., 96 U. S. 640;  Nat. Bk. v. Matthews, 98 U. S. 621.  The great majority of the state courts are now in line with the decisions of the Supreme Court of the U. S., at least so far as contracts made without authority merely, are concerned. Perkins v. Ry. Co., 47 Me. 575;  Ossipee Mfg. Co. v. County, 54 N. H. 295;  Ry. Co. v. Proctor, 29 Vt. 93;  Dill v. Wareham, 7 Metc. 438;  Monumental Nat. Bank v. Globe Works, 101 Mass. 57; Attleborough Nat. Bank v. Rogers, 125 Mass. 339; Phil. Loan Co. v. Towner, 13 Ct. 249; Hood v. Ry. Co., 22 Ct. 1; Converse v. Railway Co., 33 Ct. 166; Silver Lake Bank v. North, 4 John. Ch. 370;  Third Av. Savings Bank v, Dimock, 24 N. J. Eq. 26;  Allegheny City v. McClurken, 14 Pa. St. 81;  Penn. Del. etc. Co. v. Dandridge, 8 Gill & J., 248;  Boyce v. Trustees M. E. Church, 46 Md. 359;  Bank v. Hammond, 1 Rich, Law, 281;  City Fire Ins. Co. v. Carrugi, 41 Ga. 660;  Screven Hose Co. v. Philpot 53 Ga. 625;  Hazlehurst v. Savannah R. R. Co., 43 Ga. 13;  So. Life Ins. Co. v. Lanier, 5 Fla, 110.

Upon the right to recover in this action for money lent and advanced, see Bicknell Adm'r v. Widner, 73 Ind. 501; Tracy v. Talmage, 14 N. Y. 162; Custer v. Leavitt, 15, N. Y. 9.

*F. H. Remington, John S. Watson* and *C. M. Hertig* for respondent.

Mr. Remington argued:   If the district had not the power to make, or to direct the making of the contract, it is obvious that it had not power to ratify.   Hodges v. City of Buffalo, 2 Denio 110; 1 Dillon, Mun. Cor. § 463, 3d Ed.   This will undoubtedly be conceded.

The supreme court of the territory expressly held in the case of F. & M. Nat. Bank v. School District 53, *supra*, that neither the school board nor the school district had power to incur the indebtedness, because it exceeded the maximum of taxes that could be levied and collected in any one year.   The decision in the companion case, Capital Bank v. School District 85, 42 N. W. Rep. 774, is in entire harmony with that view.   The latter case simply holds that inasmuch as the taxes which could have been levied between the date of the warrants and the date of ratification would have been sufficient to pay the warrants, the district

at the date of ratification had the power to ratify. No such facts appear in the case at bar. Not only are the Dakota cases against the power of the voters of the district to make or authorize the contract that was made, but the cases of Kane v. School District No. 3, 52 Wis. 502, and School District v. Stough, 4 Neb. 357, also hold the same doctrine.

The statement of appellant's counsel as to the progressive limitation of the doctrine of *ultra vires* is true as to private but not as to public corporations. Zottman v. San Francisco, 20 Cal. 96; Clark v. City, 19 Iowa 199; Mayor v. Ray, 19 Wall. 468; Dillon on Mun. Cor. (3d Ed.) § 504; School Dist. v. Stone, 106 U. S. 183; Dartsmouth Savings Bank v. School Dist., 43 N. W. 822; Bank v. School Tp., *ante* p. 26.

A rehearing having been granted the case was argued by Messrs. Jones and McLaren, for appellant, and by Mr. Remington for respondent. The opinion handed down after the rehearing was filed March 16, 1891.

CORLISS, C. J. The plaintiff, seeking judgment in the court below, based its claim upon four alleged warrants, signed by defendant's clerk and director, and drawn in the usual form upon defendant's treasurer. When these papers were received in evidence they created a presumption of liability against the defendant and in favor of plaintiff, assuming that plaintiff had established its title to them. This apparent liability defendant claims to have overthrown by undisputed evidence, and the trial court so held directing a verdict in favor of defendant. Defendant's successful defense was the illegality of the pretended warrants for want of power to contract the indebtedness which they represented. If the uncontroverted facts justify the conclusion against the defendant's power to incur the debt, then the warrants are void. Their issue adds nothing to the force of the original claim. They create no new debt. No estoppel can rest upon them. Their negotiation for value before maturity will not confer any greater rights upon the purchaser. All who deal with them, either originally or by subsequent purchase, are affected by every defense to the pretended debt they represent. Bank v. Willow Lake Tp., *ante* p. 26, 44 N. W. Rep.

1002, and cases cited. The view we take of the law renders the statement of only a few facts important. The assessed valuation of the district at the time the warrants were issued and the contract on which they rest was made was $18,305. These *pseudo* warrants were given to Sargent & Germain on a contract between them and the defendant's school board to erect a school house for the district for $6,000, which contract was fully performed by them. It does not appear that the district board was ever empowered to build any particular school house, or, indeed, any school house at all. The authority must come from the inhabitants at a district meeting. The minutes of such meeting disclose merely that a motion was made and carried to ballot to build a school house. The school board was appointed a building committee, and a tax of ten mills was levied for that purpose; but it nowhere appears that the inhabitants actually balloted to erect such a building or any school house, or in any manner authorized its construction. Nor does it appear that any site was ever selected, either by the inhabitants or by the district board. It was undisputed that the district never had any title to the land on which the house was erected; nor were any proceedings ever taken by the district for the purpose of acquiring title to the land, or to secure the right to build the school house thereon. That the action of the district board in making the contract to construct the building was wholly unauthorized and void cannot well be disputed. See Farmers, etc., Bank v. School District, No. 53, (Dak.) 42 N. W. Rep. 767. The power to designate a site and to authorize the building of a school house is vested exclusively in the inhabitants. But it is urged that although not originally binding upon the district, the contract has been ratified by the conduct of the inhabitants since the erection of the school house, and the issuing of the warrants representing the alleged contract price therefor. While we do not wish to be considered as assenting to this view of the evidence, we will assume for the purpose of this opinion that there was sufficient evidence of ratification to submit to the jury. Still we think the court would have been justified in rendering judgment for defendant. Nay, we hold it would have been the duty of the court to give such

judgment.   Ratification is equivalent only to original author-
ity, and we are of opinion that the inhabitants under the
statute had no authority to direct the building of a school-
house whose cost would exceed the funds provided for that pur-
pose.   We hold that this contract was void, not only for want
of power in the district to make it, but because prohibited by
the spirit and necessary implication of the statute.

    The sections of the act essential to the solution of this ques-
tion are as follows: "§ 29.   The inhabitants qualified to vote at
a school district meeting lawfully assembled shall have power
  *   *   *   (4) to designate by vote a site for a school house;
(5) to vote a tax annually not exceeding one per cent. on the
taxable property of the district as the meeting shall deem suffi-
cient to purchase or lease a site, and to build, hire, or purchase
a school house, and to keep the same in repair." "§ 56.   The
district board shall purchase or lease such site for a school
house as shall have been designated by the voters at a district
meeting, in the corporate name thereof, and shall build, hire,
or purchase such school house as the voters of the district in a
district meeting shall have agreed upon out of the funds pro-
vided for that purpose."   Laws 1879, c. 14.   The manifest pur-
pose of this legislation is to prevent the district, unless bonds
are issued under chapter 24 of the laws of 1881, from either
mortgaging the future resources, or increasing beyond one per
cent. of the assessed valuation the present burden of the in-
habitants of the district.   The inhabitants, in meeting lawfully
assembled, select a site, direct the building of the school house,
and levy 1 per cent. tax to pay for the same.   It is out of the funds
provided for that purpose that the board is to build and pay for
the house.   The funds provided for that purpose are those on
hand, or subject to collection for that purpose, and, in addition,
the amount which can be raised by a levy of a tax of not exceed-
ing 1 per cent. on the assessed valuation of the district; and the
tax must be levied before it can be said that the funds are pro-
vided.   The inhabitants cannot in any one year levy this maxi-
mum tax for any number of years in advance.   No funds can
be deemed as provided for that purpose which the district has
not then on hand for that purpose, or subject to collection, or

which it has not levied a tax to raise. As to future levies, the fund cannot be said to be a fund provided, but is a fund to be provided in the future. The contract price for the school house in question was $6,000, or over 30 per cent of the assessed valuation of the district. If this contract were valid, those inhabitants who were not willing that such an expense should be made would be forced to pay over 30 times the maximum tax that can be levied for that purpose in any one year, or the future taxing power of the district for that purpose would be anticipated and destroyed for years to come. The evils of an indebtedness in the form of warrants to be paid in the remote future is illustrated in this case. These warrants were sold at seventy cents on the dollar; and every contracter with a district who expects pay in warrants all of which cannot possibly be paid until after the lapse of years, and who is faced with the necessity of raising money upon them by a sale at a discount, must, to save himself, charge the district, in excess of what he would otherwise charge it, enough to make good his loss and in this way the loss becomes the loss of the district. Moreover, such warrants bear a higher rate of interest than bonds which can be sold usually at par, bearing a moderate rate of interest.

That this evil was intended to be prevented by this statute, and that our interpretation of the statute is in harmony with the will of the legislature, is evinced by chapter 24 of the laws of 1881, which authorizes school districts to bond for the building of a school house. This act was doubtless passed to enable a school district to raise immediately for that purpose a sum which in many districts could be brought together only after years of maximum taxation. And this act contains a positive restriction against every district not in a town or city containing more than 1,000 inhabitants, limiting its authority to bond to the amount of $1,500. No other district can bond for more than 5 per cent. of its assessed valuation. Why this limitation, if every district could build a school house costing many times the sum limited, and create a valid indebtedness for such amount by the issue of warrants ? These warrants in this case, if valid, created when issued a present liability, which could have been put in judgment to hang over the district as an incubus, forever in the absence of

legislative relief; for the annual interest upon this debt—$600 —(10 per cent. on $6,000) would exceed yearly by over $400 the maximum tax which could be levied to apply thereon. The increase in the assessed valuation might ultimately enable the district to discharge the annual interest, but the payment of the principal must await a change in the law. An evidence of indebtedness, whose interest cannot for years be paid, whose principal can be discharged only in the event of legislative interference, must have but little value in the market, and will inevitably bring to the treasury of the district much less than its face value. The inhabitants of the district in any one year were not to be permitted thus to waste the property of future inhabitants, and create burdens, in excess of the benefits received, to be thereafter imposed upon property and values which should subsequently come under the taxing powers of the district. Our views find support in the decision of the territorial supreme court in Farmers', etc., Bank v. School-Dist. No. 53, (Dak.) 42 N. W. Rep. 767. We find nothing in Capital Bank v. School Dist. No. 85, id. 774, decided by the same court at the same term, at war with the other decision. It is true that in the first case the court, while favoring the construction we adopt, limited the scope of its decision to the denial of the right to create a present indebtedness by the issue of warrants payable immediately in excess of the amount of tax that could be levied during the year the debt was contracted. This is the doctrine of Minnesota under a similar statute, but we cannot give it our assent. If the contract to build the school house is valid, we see nothing in the statute to prevent the issuing of warrants to pay the contract price therefor, payable immediately, and such warrants the creditor is entitled to. If, as we hold, the policy of the law condemns the extravagant debt, it is of no importance whether the debt is payable at once or in the future. It is, in fact, payable in the future, although the warrant is due immediately, for a judgment recovered upon such warrant can be satisfied only from an insufficient tax to be levied for years before full payment can be made. We do not believe that the legislature intended that these municipal corporations, intrusted with so few duties, possessing such

meager powers, so dwarfed in their stature that they bear but faint resemblance to the more perfect forms of municipalities, should possess authority to mortgage their taxing power so heavily that the interest of the debt could not be fully discharged; that the principal itself must remain forever unpaid.

Especially strong are we in this view when we consider that the same corporations have been given authority to borrow on district bonds a limited sum of money for the very purpose of building school houses. This act provides fully for the payment of the interest on the bonds and the extinction of their principal by the creation of a sinking fund to be derived from a tax of two mills. No means of paying the warrant indebtedness or the interest thereon are designated, and this points strongly against the power to create such an indebtedness. It is true that a tax of five mills may be levied for the purpose, among other things, of discharging any debts of the district lawfully incurred, but only little, if any, of this could ever be available to apply on the interest and principal of such warrants, as this is all the tax there can be levied to furnish the furniture and necessary apparatus for the school house of the district. The language of the supreme court of Wisconsin in Kane v. School-Dist. No. 3, 52 Wis. 502, 9 N. W. Rep. 459, meets our full approval: "We entertain very grave doubts whether the board and the voters of the district combined can make a contract payable out of funds not intended to be voted or raised by taxation during the current year, except by taking such proceedings in the particular cases authorized, as are necessary, under the statute, to make a loan in behalf of the district. If they can, then it would be wholly unnecessary to make any loans on behalf of a district, and the district might during any current year incur such an amount of indebtedness, to be charged upon the funds of succeeding years, as to absorb all the taxes which could be lawfully collected in such years, and leave the district wholly without resources, except by a repetition of the same system of mortgaging the future for the necessities of the present. Either this result would follow, or, if such liabilities were held to be debts lawfully incurred by the district, then the tax-payers of the district could be compelled to raise the neces-

sary amount to pay the same at the time agreed upon for their payment, notwithstanding such sum might exceed the limit fixed by the statutes for raising money by taxation for the purposes for which the debt was incurred. It seems to be the policy of the laws of this state to restrict the expenditures of the towns, cities, counties, and school districts within certain specified limits; and in the case of school districts it has put a very effectual restraint upon such expenditures by fixing a limit to the amount which can be lawfully collected from the tax-payers of the district for school purposes in any one year. To give proper force to these legislative restrictions it would seem necessary to restrain the district, as well as its officers, from contracting debts drawing interest, which can become a lawful charge upon the future resources thereof."

The district could not estop itself from setting up this plea of *ultra vires* by any act on its part, nor could it ratify what it had no power originally to do, nor can it be made liable for the value received. The contract out of which the warrants grew was not merely beyond the power of the corporation; it was prohibited by the spirit and policy of the law. An express prohibition would not, as we construe the statute, add any strength to this view of the case. The law will not imply a promise to pay against its own prohibitions, nor will the courts suffer a policy once declared to be defeated by the receipt of the benefits of a contract which that policy condemns. The spirit of the legislation we have been considering is that these small and feeble corporations shall keep within very narrow bounds in their expenditures; and an implied liability for an amount in excess of that limit—perhaps enormously in excess—because of value received, would bring the wisdom and strength of a salutary policy to naught. The sovereign power, by limiting the capacity of the inhabitants of this as well as of other districts to contract indebtedness, determined to save them from the evil effects of temporary extravagance. This court is now asked by its judgment nevertheless to visit the consequences of such extravagances upon their heads. The doctrine that there is no implied liability against the law's prohibition or policy is sound on principle, is supported by numerous prece-

dents, and the question is not open to debate in this jurisdiction.   Bank v. Willow Lake School Tp., (N. D.) 44 N. W. Rep. 1002.   This controversy illustrates the wisdom of the rule we enunciate.   This contract, if valid, would mortgage the entire property of the district for one-third of its assessed value, and the equivalent for this enormous incumbrance would be only a school house.   Place no limit upon the power of the inhabitants and it would be easy for corrupt men to secure and wield the controlling power in sparsely settled districts, and create obligations binding upon the district so appalling in amount as to drive out its inhabitants, and prevent others from settling within its borders.   It is gratifying that in this case law and justice go hand in hand.   The question of legal fraud is not before us, but he indeed must be obtuse who cannot find corruption in the conception and consummation of this school house project.   No community, without being the victim of fraud, would ever burden itself to build a school house with a debt equal to one-third of its entire wealth.   The loss may fall upon one guiltless of any participation in or actual knowledge of that fraud; but, had the plaintiff made those inquiries touching the purpose for which these warrants were issued, and respecting the assessed valuation of the district, which the law's behests and common businesss prudence required, suspicion of fraud must have been aroused.   The judgment of the district court is affirmed.   All concur.

ON REHEARING.

We see no reason to alter our views in this case.   On the contrary, we are strengthened in our opinion.   We will discuss the new arguments advanced by appellant's counsel.   It is said that the statute designates three distinct school district funds—one for the erection of school houses, etc., for the purchase of schoolsites, and the payment of debts contracted for that purpose and called the "school house fund;" a second for rent, repairs, fuel, etc., known as the "contingent fund;" and a third for the payment of teachers' wages, named the "teachers' fund."   § 52. And it is then insisted that when the statute limits the power of the district board to build a school house out of the funds pro-

vided for that purpose the only object of the statute is to point out the particular fund among these three funds out of which the school house shall be built. In the first place no necessity for such a provision existed, if that was designed to be its scope and meaning. The legislature had already in explicit terms provided how each of these three funds should be applied, and the use of any portion of these funds for a purpose not authorized would have been illegal without additional legislation. Neither the teachers' fund nor the contigent fund, except by virtue of some special provision authorizing such a course, could be used to build a school house. "The district treasurer shall separate the moneys received from the county treasurer by district tax into the different funds in proportion to the rates of taxes levied by the district, and shall keep a separate account with each fund in a suitable and permanent book of record to be provided by the district board. He shall pay no order which does not specify the fund on which it is drawn, and the use to which the money is applied." Id. Moreover, the language of § 56 is fatal to this construction. The section does not provide that the district board shall build the school house out of the "fund" provided for that purpose, but out of the "funds" provided for that purpose. If the object of the legislature was to designate the particular fund as contradistinguished from the two other funds, the singular, and not the plural, of the word would have been employed. All through § 52 the singular is employed in designating each fund; and in § 44 the same care in the use of the word is manifested. So long as it is used to distinguish these three funds the singular is employed. But when we reach the provision authorizing the treasurer to make an indorsement upon a warrant because not paid for want of money the statute speaks of "funds." "Each order shall specify whether the money is to be paid from the teachers' fund, the contigent fund, or the school house fund; and in case the treasurer has no money in the fund drawn upon to pay such school warrant, he shall indorse it, 'Not paid for want of funds.'"

It is apparent that whenever the legislature intended in this act to refer to a particular fund to the exclusion of the other funds they used the word "fund" for that purpose; and on the

other hand, when they employed the word "funds" their purpose was to refer to moneys generally, and not to refer to any special fund, as distinguished from all others.    Nor can it be inferred from this provision imposing the duty on the treasurer to make the endorsement "Not paid for want of funds" that it was the purpose of the legislature that debts might be contracted to any extent, and therefore in excess of the ability of the dis-trict to meet them out of the taxes of the current year.  This pro-vision has reference solely to those frequent, but temporary, deficits in the treasury, arising from the fact that debts, although contracted subsequently to the levy of a tax to pay them, may fall due before the taxes are collected.    Even when the last day of payment has arrived there is no certainty that it will witness the full discharge of this important duty to the government. The experience of mankind justifies the conclusion that some portion of the tax will be withheld until payment is coerced. Inability to pay, a determination to test the legality of the tax, the injunction of a court restraining its collection, are among the many causes which almost invariably keep a portion of the levy from the public treasury beyond the day when it should have been paid in.    It may be stated as a rule practically without exception that some portion of the debts of a school district will become payable before the funds provided for that purpose are on hand to be applied in extinguishment of such debts.    It is in the light of these facts that we are to construe the requirements that the treasurer shall make the en-dorsement, "Not paid for want of funds."  Nor is there anything in that provision authorizing the levy of a tax of five mills to pay, among other things, "debts or liabilities of the district law-fully incurred" to warrant the contention of appellant.    The insignificance of this tax, especially when it is considered that it is the only tax that can be levied for the purpose of furnish-ing the school house with school furniture, apparatus, etc., is conclusive that the object was not to provide means of discharg-ing debts unlimited in amount; but to meet these liabilities which, through the failure to collect in full the amount of a levy for any other purpose, or by reason of any other peculiar cause, might find no funds for their payment.    Suppose the debt for

building a school house is precisely the amount of the levy for that purpose, but because it falls due before the funds are on hand, and because the warrant issued to represent it is indorsed "Not paid for want of funds," the debt bears interest at the rate of 10 per cent. The collection of the full amount of tax would leave the interest unprovided for; and, being a valid claim, it was entirely proper that some provision should be made for its payment. We have that provision in the section which declares that the tax of five mills may be used for the purpose, among others, of discharging any debts or liabilities of the district lawfully incurred.

We do not see how it is possible to subject the school district to liability for the value received in this case without overthrowing what we regard as the settled policy of the legislature touching such districts. We believe that they were not to contract debts in building school houses beyond their present power to provide funds. An express declaration that such was the legislative purpose would not strengthen our convictions in this respect. The people were to be protected against their own temporary extravagance. A large body of non-voting tax-payers, women, minors, foreigners who had not declared their intention to become citizens, and non-residents, were to be saved from the extravagance of voters. Frauds might be easily perpetrated in sparsely settled districts. These were some of the considerations which led the legislature to confer only such power to create indebtedness as was commensurate with the ability of the district to discharge it by funds on hand or under the control of the district by reason of the levy of a tax for that purpose. There exists an intimate connection between the power of municipalities to create indebtedness and the ability to discharge it by taxation. In no other manner can municipal or *quasi* municipal corporations meet their obligations. Property used for public purposes cannot be touched; money must be brought into the treasury by taxation to pay debts. Having specially authorized the building of a school house out of funds provided for that purpose, the statute clearly prohibits the erection of school houses in any other manner or under any other circumstances. An express prohibition would have manifested the same purpose

in only a different form.  Said the court in Clark v. School-Dist. No 1, 78 Ill. 474:  "The authority given to school directors by statute to 'appropriate to the purchase of libraries and apparatus any surplus fund after all necessary school expenses are paid,' is a limitation of their power to make such purchases to the circumstances named, and is an implied restriction of any power to purchase generally on credit.  A purchase of such articles by the school directors on a credit when it does not appear that there were any surplus funds after all necessary school expenses were paid applicable to such purchase, is void, and there is no contract implied by law to pay for articles thus purchased arising from their receipt and use.  The only remedy of the seller under such circumstances is to reclaim the property itself."  See also, Dickinson v. City of Poughkeepsie, 75 N. Y. 65, cited with approval in People v. Gleason, 121 N. Y, 631-634, 25 N. E. Rep. 4; Addis v. City of Pittsburgh, 85 Pa. St. 379.  In Farmers' etc., Bank v. School-Dist. No. 53, (Dak.) 42 N. W. Rep. 767, the court, referring to this statute said:  "School-districts are corporations created for special purposes, and have only such powers as are specially granted by the legislative enactment, and those that are necessarily implied to accomplish the objects for which they are created.  The specification of these powers by the statute under which they are organized restrains them from the exercise of other powers than those granted, and such as must be implied to enable them to effect the object of the grant, and operates to restrain them from the exercise of other powers; and in the discharge of their duties and the exercise of the powers granted they are governed and restrained by the provisions of the law under which they are created.  Where the law specifically defines their powers the legal presumption is that they are prohibited from the exercise of any others than those absolutely essential to enable them to accomplish the purposes of the grant."  Said the court in Gelpcke v. City of Dubuque, 1 Wall. 220:  "What is implied in a statute is as much a part of it as what is expressed."  In City of Evansville v. State, 118 Ind. 426, 21 N. E. Rep. 267, the court states it as well settled that "a law may be within the inhibition of the constitution as well by implication as by expression."

It will be noticed that nowhere are the inhabitants generally authorized to build school houses. They have power to vote a limited tax for that purpose, and the district board shall build such school house as the inhabitants designate at a district meeting, not on the credit of the district, not by anticipating its revenues for years to come, but only out of funds then actually provided for that purpose. This is all the authority the inhabitants possess, and every tax-payer has a right to insist that it is all they shall exercise, and that his property shall not be burdened because of the receipt of value against this wise restrictive policy of the law. It is not strictly accurate to assert that a municipal corporation is invariably benefited to the extent of value received when that value has assumed the form of immovable property. It would be far from the truth to state that a school district poor in treasury and in the taxable property of its inhabitants, and requiring but a small school house to accommodate its pupils, would be benefited to the extent of its value by the erection of such a school building as would be a credit to some great metropolis. Private business corporations, when transcending their powers in the purchase of property, should be held responsible for the actual value of the property received, because, being organized for purposes of trade, they have power to dispose of such property in the same manner as individuals. School houses are not erected for sale or for speculation, and the benefit to the district is not to be determined by any market price, but by their value for use for the specific purpose for which they were erected. For such purpose a school house costing many thousands of dollars might be no more valuable than one costing only as many hundred. There is, therefore, a good reason for making a distinction between private and municipal corporations in determining whether an act in excess of power is prohibited in the sense that it cannot form the basis of a claim even for value received. We do not, however, wish to be understood that in every case, and under all circumstances, no recovery can be had on *quantum meruit* where a contract of a muncipality is in excess of its powers. We decide merely this case. While satisfied that the defense which we sustain will work justice in this case, we are not unmindful of the fact that

there may be instances in which to insist upon it will savor somewhat of repudiation—where a school house only commensurate with the needs of the district has been erected fairly and with the assent of all the people. We feel confident that in such cases a sense of honor will prompt the people to brush aside this particular defense of want of power, and move them to pay that which the law, indeed, but not conscience, would justify them in withholding. The judgment is affirmed. All concur.