Edinburg American Land and Mortgage Company v. City of Mitchell.

1.  July 1, 1880, school district No. 6, Davison county, authorized its school board to build a suitable school house, and to expend a sum of money not to exceed $5,000 in building the same. It was also authorized to procure plans for the house, which were to be presented to the people of the district for their consideration at the next meeting. At that meeting plans were presented, but not accepted, but an architect was empowered to make other plans and specifications for a certain size building, and to have them ready at the next meeting of the district. At that meeting no plans or specifications were presented, or adopted by the district, but the meeting appointed the school board a committee to carry out the previous vote of the district to build a school house, and with power to act fully in the matter, limiting the board to a certain size for the building and the amount to be expended. *Held*, that the power thus conferred on the school board was full and complete, limited only as to size of the school house and the amount of money to be expended, and that their authority to act was as broad and general as the voters of the district could legally confer upon them; and so long as they acted honestly, and for the best interests of the district, their acts were legal and binding.

2.  The school board let the building of the school house, according to certain plans and specifications, for the sum of $4,425. As the work progressed, it was seen that certain changes were necessary in order to make the building symmetrical and strong, which changes were made by order of the board, causing an additional outlay of of $512. *Held*, that so long as the changes were beneficial and necessary, and the additional cost, added to the original contract, did not exceed the amount

Vol. 1, S. D.—38.

limited to be expended, the board had the power to make them, and its acts are binding on the district.

3. School warrant issued by a school board under the provisions of Section 62, c. 14, Laws 1879, in payment of necessary appendages for a school house during the time a school is taught, are *prima facie* valid claims against a school district; and, in the absence of evidence to the contrary, the law will presume that they were lawfully issued, and that they were duly presented and allowed at a regular meeting of the district, if such presentation and allowance was necessary.

*Held*, that as the school board, about the the time the contract was let for the school building, issued and sold a school order for $5,000 to raise funds with which to erect said building, the power of the board to issue orders under the authority conferred by the school district meeting was exhausted; and that the orders in controversy in this action, being, in his opinion, in excess of the $5,000, were void, except as to the amount of $168 incurred for school appendages. Per CORSON, P. J., dissenting.

(Syllabus by the Court. Argued April 14, 1890. Opinion filed Feb. 21, 1891.)

Appeal from district court, Davison county. Hon. BARTLETT TRIPP, Judge.

Action upon three certain warrants drawn in favor of one Calhoun by the school board of District No. 6, Davison county, which district was succeeded by the City of Mitchell, the defendant. Judgment for plaintiff. Defendant appeals. Affirmed. CORSON, P. J., dissenting.

The facts are stated in the opinion.

*A. E. Hitchcock*, for appellant.

The school district had no authority to incur an indebtedness in excess of one per cent. of the taxable property therein. The action of the inhabitants of the district in voting to build a school house costing more than that amount and the subsequent action of the board in building the house and creating a debt therefor were invalid. §§ 29, 26, Chap. 14, Laws of 1879; Farmers and Merchants' Bank v. School District, 42 N. W. 767; Capital Bank v. School District, 42 N. W. 774.

The district school board in changing the plans upon which they were instructed to erect the building by the voters of the district, in contracting debts, auditing bills and drawing warrants without consultation with the district and in expending sums in excess of the amount limited by the formal vote of

the district, acted without authority and their acts could not bind the district.    Gebling v. School district, 4 N. W. 1023; Kane v. School District, 9 N. W. 461.

The school district by mere use and occupation by the public of the building for school purposes is not estopped to question the legality of the indebtedness.    Dartmouth Savings Bank v. School Districts, 43 N. W. 825; Zaltman v. San Francisco, 20 Cal. 77; French v. Feschemaker, 24 Cal, 550; Hero v. San Francisco, 33 Cal. 145; Nicholson v. Painter, 20 Cal. 705; McCoy v. Blaut, 53 Cal. 250; School Directors v. Fogleman, 76 Ill. 189.

*Keith & Bates*, for respondent.

No limitation being placed by statute upon the amount the school district could expend in building a school house, and the only limitation being as to the amount of tax that could be levied in any one year for that purpose, the district had the right to authorize the issuance of the $5,000 order payable in ten years, for the purpose of building the school house, as the amount of the order and the interest thereon would be less than the aggregate amount which the district had power to expend during the ten years for that purpose.    Capital Bank v. School District, 42 N. W. 774; Robbins v. School District, 10 Minn. 268.

By accepting and using the materials and building the district ratified the acts of the board even if unauthorized and the defendant by accepting and using the building and assuming the debts and liabilities of the district and voting bonds to pay the same also ratified those acts, and is estopped to question their legality.    Bellows v. Township, 30 N. W. 582; Currie v. School District, 27 N. W. 922. Athearn v. District, 33 Ia. 105; Marshall Co. v. Schenck, 5 Wall. 772; Bank v. Daudridge, 12 Wheat. 70; Alleghany City v. McClurkan, 14 Pa. St. 81; Pickard v. Sears, 6 Ad. & Ell 475; Brown v. Bowen, 30 N. Y. 541; Merchants' National Bank v. Bank, 10 Wall. 604; Zabriskie v. Railroad, 23 How. 381; Mercer County v. Hackett, 1 Wall. 83; Stoney v. Ins. Co., 11 Paige 635; Railroad v. Schuyler, 38 Barb. 536; Id. 34 N. Y. 30; Railroad v. Marion Co., 36

Mo. 294; Hem v. Nichols, 1 Salk. 289; Swan v. Brit. Ans. Co., 7 H. & M. 603.

BENNETT, J. This was an action based upon three certain warrants drawn in favor of one H. H. Calhoun by the school board of distrtct No. 6, Davison county, which district was succeeded by the City of Mitchell. The warrants are dated September 10, 1881, are of the amounts of $350, $350, and $330, respectively, and were issued by the school board of that district in final settlement upon a contract for building a school house, and subsequently transferred by Calhoun to the plaintiff. The answer of defendant alleges that the warrants or orders set out in the several causes of action were issued by school district No. 6 without authority of law, and alleges several affirmative defenses denying the liability of the district to pay them, but makes an offer to allow judgment to be taken against it for the sum of $350, together with interest at 10 per cent. from the 10th day of September, 1881, to the present time, together with costs of the action; the same being the amount claimed by the plaintiff in its first cause of action. This offer was made under Section 5246, Comp. Laws. An agreed statement of facts was filed, to be taken in lieu of facts determined and found by a jury. The cause was submitted to, and duly tried by, the court, and the following findings of fact and conclusions of law were found: "Findings of fact: The above entitled cause came on for trial before the court by agreement of parties, and the court finds that the facts hereinbefore set forth, and agreed upon by said parties, are true, and that there is due said plaintiff from said defendant the sum of $1,030, with interest thereon at the rate of 10 per cent per annum from said 10th day of September, 1881." The court made and found the following conclusions of law: "(1) That upon the incorporation and organization of defendant, City of Mitchell, and the merger of said school district No. 6 herein, the defendant, City of Mitchell, became legally responsible for, and holden to pay and discharge, the valid and legal claims and obligations then outstanding against said school district number 6. (2) That said school district number 6 was, and this defendart,

City of Mitchell, is, by their acts and doings set forth in said facts so found and filed, estopped from denying the legality of said votes, and the validity of said plaintiff's claim, said orders, or warrants. (3) That said sum of $1,030, and interest thereon, was a valid and subsisting claim against said school district No. 6, and that the same, with accrued interest thereon, is a valid, subsisting claim in favor of said plaintiff and against said defendant. And that said plaintiff is entitled to recover the same of the said defendant, with interest thereon at the rate of 10 per cent. per annum from the time said orders or warrants were presented to the then treasurer of said school district No. 6, and payment thereof demanded." Upon these findings of fact and conclusions of law a judgment was rendered against the defendant for the debt and interest, amounting to the sum of $1,752.63, with costs. From this judgment an appeal was perfected, and an assignment of errors was filed. The assignment of errors presents three propositions for our consideration: (1) Was the school board authorized to make changes in the plan of the school house, incurring an additional expense to the district? (2) Was the school board authorized to issue the three orders or warrants in controversy? (3) Did the acceptance of the school building and other improvements made by the school board, by the school district, estop it from denying the validity of these orders or warrants?

In considering the first proposition,—of the authority of the school board to change the plan of the school house before or during its erection,—the agreed statement of facts must be critically examined to ascertain the full power of the board as delegated to it by the legal voters of the district. The facts show that at a meeting of the school district No. 6, duly noticed and called, on the 1st day of July, 1880, this board was authorized "to build a suitable school house for said school district, and to expend a sum of money not to exceed five thousand dollars in building the same." At the same meeting the school board were instructed to procure plans for a school house, to be presented to the people for their consideration at the place of holding their next meeting. The meeting then ad-

journed to the 8th day of July. Nothing appears to have been done at that meeting in relation to the building of the school house, but it adjourned to meet on the 10th day of July. The legal voters of the district being present at this meeting, William Cox presented plans for the school building. Afterwards he was empowered to make plans and draw up specifications for a building to be 40x60, 2 stories high, of 12 feet each, and to have them at a meeting to be held on the 17th of July. On that day the legal voters of the district again assembled, but Mr. Cox did not present himself, nor did he through any other person submit, any plans or specifications for a school building for adoption, modification, or rejection, nor were any other plans or specifications submitted by any other persons or adopted. At this meeting the school board were appointed a committee to carry out the previous vote of the district to build a school house, and with power to act fully in the matter. At this time the size of the house was changed from 40x60 to 40x56, and two towers were ordered to be put on the building. In accordance with the authority thus conferred upon the board, they advertised for bids to furnish material and do work of constructing the house. Only one bid was received, and it was not accepted. The plans were changed according to the agreed statement of facts, but in what particular is not stated. The board again advertised for bids upon the amended plans. By whom they were amended is not shown, nor does it appear what the changes were. Calhoun, being the lowest and best bidder, was awarded the contract by the board for $4,425, based upon the plans and specifications of William B. Cox. The agreed statement does not show that the district ever adopted any plans and specifications for the construction of the school house. They simply authorize William B. Cox to make them, and present them to a meeting of the district. The district voted to change the size of the house after they had authorized Cox to make the plans, and to place towers on the building, and then appointed the school board a committee to build the house, and to act fully in the matter. It is thus evident that the power con-

ferred on them was full and complete, and was only limited as to the size of the school house and the amount of money to be expended. Their authority to act was as broad and general as the legal voters of the district could confer upon them. The facts not even show upon what plans or specifications the contract was let. It is said it was upon those furnished by Cox. If this were so, it could not have been upon those presented by him at the July 10th meeting, because afterwards the size and form of the building were changed, and nowhere does the record show that any plans or specifications were submitted to any meeting of the district, and, if the contract was let or based upon any prepared by Cox, they must hace been approved by the board, under their general powers, and, if so, it could change or modify them under the same powers. It did not need the express sanction or approval of the voters of the school district to make the necessary changes by the board valid or binding. The general powers of the board, either in their official capacity or as a committee of the district, had never been curtailed or limited by the district since they were conferred; the limitation being as to size of building and amount to be expended only. As the work progressed it was seen that certain changes were necessary in order to make the structure symmetrical and strong, and the agreed statement of facts shows that they were beneficial, and improved the appearance and strength of the building. The position assumed and the points contended for by appellant are not applicable, because it has not the facts upon which to stand to sustain them. Had the school district reserved to themselves the details of the building, adopted specific plans, and only empowered the board to carry out their wishes, limited to such special plans and specifications, plaintiff's contention, no doubt, would be correct, in case of violating or altering them. But nowhere can it be found that this board were under such limitations. They were authorized to "act fully in the matter;" and as long as they did so, and acted honestly, and for the best interests of the district, their acts were legal.

Was the school board authorized to issue the three orders or

warrants in controversy? Before the statement of facts were agreed upon, the defendant duly served upon the plaintiff an offer of judgment for $350, together with interest at 10 per cent. from the 10th day of September, 1881, with costs of the action; this being the amount claimed by the plaintiff in its first cause of action, and being the amount of one of the orders or warrants. This offer was made under Section 5246, Comp. Laws, the object of which is to relieve the defendant from all liability to such costs as may accrue subsequent to the offer, and at the same time protect himself against all unjust demands on the part of the plaintiff, by interposing a defense and proceeding to trial. This remedy is only resorted to when the defendant is satisfied that no defense can be made to the whole or that part of plaintiff's claim. It is equivalent to admitting the liability of the defendant for the amount of the offer. The defense is therefore in this case directed to but two of the orders or warrants,—one for $350, the other for $330. It is conceded that, shortly after the contract to build the school house was made with Calhoun, the district issued its order for $5,000, and converted it into cash, which was put in the treasury as a fund to draw from, and used to pay the expense of constructing said school house; and from this fund appropriations were made from time to time by orders in favor of the contractor, aggregating, up to the orders in suit, the sum of $4,075. The original contract with Calhoun called for $4,425; leaving due him the sum of $350 on the original contract price. It is for this amount the district concedes its liability by its offer of judgment. It is also conceded by the agreed statement of facts that after the school house was completed the school board had a settlement with Calhoun, the contractor, and it was found that there was due him the sum of $680 for extra work in making certain changes and additions, and for necessary appendages, that had been ordered by the school board during the progress of the work, and not included in the original contract. It is also conceded that this amount was a reasonable compensation for the work done and labor furnished in making such changes and additions, and for the necessary appendages to the school building. Subsequently

these two orders were issued by the board in payment of this work. The board having legal authority to make the change in the building, the district was liable for the payment of the extra expenditure, so long as it did not exceed $5.000, the sum limited to be expended on the school house. The changes and additions made to the building, as shown by the agreed statement of facts, amounted to $512, which added to the original contract price of $4,425 made the sum of $4,937 expended for the building. Up to this amount the board had an unquestioned right to draw on the building fund, and for which the district was liable. It is conceded by both sides that $168 of the amount included in these orders was no part of the indebtedness for building the school house as contemplated by the contract, but, rather, "necessary appendages for the school house." The items were unpacking and setting up seats and desks, extra black-boards, hanging the bell, and building two outhouses. Section 62, c. 14, Laws of 1879 then in force, is as follows: "The district board shall provide the necessary appendages for the school house during the time school is taught therein, and the bills for the same shall be presented and allowed, if reasonable, at any regular district meeting." It is agreed that these items were such as were contemplated by the section above quoted, and, as such, the board was authorized to furnish them; but appellant insists that the indebtedness therefore did not become the indebtedness of the district until bills for the same were presented and allowed at a district meeting. The agreed statement upon which this case was tried does not touch the question of fact as to the presentation or non-presentation of this account to a district meeting. It neither affirms nor negatives, but is simply silent as to such fact. The theory of defendant and appellant seems to have been that it was incumbent on the plaintiff to show in the first instance, as a part of his case, that the account was presented and allowed at a district meeting; but we do not think that this is tenable ground. The action was brought upon orders or warrants regular and valid upon their face, and, in the absence of evidence, the law will presume that they

were lawfully issued, and that such presentation and allowance, if necessary, were made. This is a substantial part of what is meant when it is so often said that such orders or warrants are *prima facie* binding and legal. Their apparent validity may be impeached by showing that the officers issuing them were not properly authorized, but that is a matter of defense. The order itself, with the presumption which comes with it, shows a *prima facie* cause of action, good until overcome by adverse testimony. Commissioners v. Day, 19 Ind. 450; Brown v. Town of Jacobs, (Wis.) 45 N. W. Rep. 679; Cheeney v. Brookfield, 60 Mo. 53; Clark v. Des Moines, 19 Iowa, 227; Grayson v. Lathram. 84 Ala, 546, 4 South. Rep. 200, 866. While there are some expressions in Kane v. School District, 52 Wis. 502, 9 N. W Rep. 459, which, isolated from the context, would seem to teach a contrary doctrine, we do not think such is the effect of the whole case. The court was declaring the law which should govern that case, and there the orders were, on their face, payable at a stated time in the future, and the court says that under their statute "the officers are not authorized to issue orders in the nature of contracts payable in the future, and chargeable upon taxes which might thereafter be voted by the district;" in this case the orders were due and payable immediately upon presentation. In that case the evidence affirmatively showed, in the language of the court, "that the account was never presented to or allowed by the voters of the district at any time;" in this case there is no evidence, either way, bearing upon the question of presentation or allowance.

With great care we have fully examined all the cases cited by appellant in support of its position, particularly the leading case of Zottman v. City of San Francisco. 20 Cal. 97. That was an action founded on a bill for extra work, including material furnished for its execution. The charter of San Francisco provided explicitly how improvements should be made, and how contracts for work should be let, and empowered the common council to pass all proper and necessary laws for such improvements, and required every ordinance providing for

specific improvements to be published. with the ayes and noes,
in some city paper, and it declared that all contracts for work
should be let to the lowest bidder after notice given through
the public journals.    These provisions, while conferring the
authority upon the common council, also fixed the limits and
bounds of their action.    Beyond them they could not go, and
give validity to their acts.    The wisdom of this legislative re-
striction no one can question.    It was to apprise the public of
the improvement contemplated, and thus give an opportunity
to suggest objections, and to prevent improvident legislation
and favoritism or fraud on the council or the officers of the city
in making contracts; and the decision of Judge Field, in this
case, was made under the provisions of this charter.    When
the mode in which their power on any subject can be exercised
is prescribed by the charter, that mode must be followed.    The
mode, in such cases, constitutes the means of power.    This is
the gist of all the cases cited, and to the doctrine therein enun-
ciated we do not in any way dissent, but the cases are not ap-
plicable to the one before us.    The legislative enactment creat-
ing school districts gave ''the inhabitants qualified to vote at a
school district meeting'' the power ''to purchase or lease a site,
and to build, hire, or purchase a school house, and to keep the
same in repair,'' and also ''to vote such tax as may be neces-
sary to furnish the school house with black boards, outline
maps   *   *   *   or to discharge any debts or liabilities of the
district lawfully incurred.''    It also empowered the distrtct
board to provide the necessary appendages for the school house
during the time school is taught therein.    There is no provision
specifying the explicit mode in which any of the above powers
shall be exercised.    It makes no directions for letting the con-
tract for building a school house, or the purchase of a site upon
which to place it, nor for the district board to furnish the ap-
pendages for the same, but grants the general power to do so,
leaving the details to the judgment and discretion of the inhab-
itants or the officers of the district.    In the absence of this, it
is no violent presumption to hold that when these powers are
attempted to be exercised, in no matter what way that is usual

and legitimate, and the transaction is devoid of any fraud or dishonesty, and resulting in benefits in which the inhabitants of the whole district are the beneficiaries and participants, it would be a sad commentary upon justice to say that the district was not liable to pay for these benefits. Holding these views, based upon a careful review of the questions involved in the record of this case, we must say that the record shows no defense to these orders or warrants upon which this action is founded. Such being the case, it is unnecessary to consider the third proposition raised by the appellant. The judgment of the court below is affirmed.

KELLAM, J., concurring.

CORSON, P. J., (*dissenting.*) I am unable to assent to the conclusions reached by a majority of the court. The case, as I understand the agreed statement of facts, is substantially this: In July 1880, at a regularly called meeting of the electors of school district No. 6, it was unanimously voted that the school board be authorized to build a suitable school house, and to expend therefor not to exceed the sum of $5,000. This is the only authority ever given to the school board to raise or expend any money on account of this school building, and no funds were provided by the district meeting for the construction of the school house, except it was embraced in the authority given the board to build the school house, and "to expend therefor not to exceed the sum of $5,000." On August 2, 1880, five days before the contract to build the school house was let, the school board issued and sold a school district order for $5,000 to raise funds with which to build the school house the district had authorized to be built at its July meeting. The question, then, presented is, was the school board authorized—after having issued and negotiated the school district order for $5,000, the amount to which the board had been limited by the district meeting—to issue further orders, binding upon the district, without further authority from the electors of the school district?

1.   School districts are corporations of the lowest order of public corporation, and they and the officers thereof, or school

district boards, have only such powers as are expressly conferred upon them by law, or are necessarily implied, to accomplish the objects for which they are created. 1 Dill. Mun. Corp. § 25; Harris v. School Dist., 28 N. H. 58; Bank v. School Dist., (Dak.) 42 N. W. Rep. 767; Glidden v. Hopkins, 47 Ill. 525. Section 56, c. 14, Laws 1879, in force when the school building in district No. 6 was erected, provides that "the district board shall purchase or lease such site for a school house as shall have been designated by voters in the district meeting in the coporate name thereof, and shall build, hire, or purchase such school house as the voters of the district in a district meeting shall have agreed upon, out of the funds provided for that purpose." It appears in this case that the voters of the school district had provided a site, agreed upon the style, size, and plan of a school house, and had limited the amount to be expended thereon to a sum not exceeding $5,000, but it had not specifically provided funds for that purpose. As the voters had authorized the board to erect the school building, and had not designated a fund out of which the same should be paid, it would seem to be a fair construction of such authority to say that the school board was vested with a discretionary power to pay for such school house by orders drawn on the district treasurer, or to raise the funds by orders sold for cash; in each case limited, however, as to amount to be expended by the voters of the district at their district meeting. The board, acting under this authority and the discretion vested in them, adopted the latter method, and issued an order for the full amount to which it was limited, namely, $5,000, and disposed of the same to raise the necessary funds to build the school building. How much was realized by this sale, or what was done with the proceeds over and above the sum of $4,075 paid Calhoun upon his contract, does not appear. Having issued and disposed of this order for the full amount of $5,000, to which it was limited by the voters of the district, was not the power of the board exhausted? Whence did the board derive any power to bind the district and the tax-payers thereof for the payment of any greater sum than the $5,000? It was cer-

tainly not given by the voters of the district, is not conferred by the statute, and the board had no implied authority to bind the district, for all the power it possessed in the premises was derived from the district meeting. It was strenuously contended by the learned counsel for respondent that, inasmuch as the school board was authorized to expend a sum not exceeding $5,000 in building a school house, it had power to issue its orders until this amount was actually expended upon such building; and that as there was a deficiency, from some cause, of $925 in the original amount, it could be made up by other orders of the board. And this view seems to be sustained by the opinion of the court; but I cannot accede to this view. If adopted, what limitation would there be upon the power of the board, and what protection would the tax-payers of the district have against the unwise or fraudulent acts of their school board? Suppose, in this case, instead of the $925 becoming unavailable, the whole $5,000 realized from the sale of the order had in some mysterious way disappeared, would it be claimed that the board could then, under its authority, issue orders, binding upon the district, to the contractor, for the whole expense of the building, thereby imposing a burden of $10,000, more or less, upon the tax-payers of the district, when they had expressly limited the board to $5,000? If the board could add $1,030 to the $5,000, could it not add any other sum as well? The orders in controversy in this suit are in addition to the $5,000 order issued by the board, and paid or assumed and provided for by the issuance of bonds by the defendant in this action, and, if valid, would increase the burden of the tax-payers of the school district to the amount of these orders, not only without their consent, but against their express limitation of the amount to be expended.

In New Hampshire, in Harris v. School Dist., *supra*, the court says: "The district may clearly, by their votes for building and repairing school houses, limit the expense to a definite sum; and they may limit the precise repairs. or the exact description of the school house to be built; and when this is done the committee cannot bind the district by exceeding those

limits." While it is true that in this state the duty of building the district school house is imposed upon the school district board—when the erection of a school house is authorized by the district—instead of a committee, as in New Hampshire, yet the powers of the board in respect to the construction of the building, and to contract debts in excess of the amount designated, is quite as limited as those of the committee in that state. The rule that the powers of boards of public corporations are to be construed strictly, and that such boards do not bind the corporation where they exceed the powers conferred or necessarily implied, has been applied in the recent cases in the United States courts to the issue of municipal bonds. In Bank v. Bergen Co., 115 U. S. 384, 6 Sup. Ct. Rep. 88, the court says: "The law under which it [board of freeholders of the county] derived all its powers provided for the issue of bonds to meet the indebtedness from those about to mature. All such matured bonds had been surrendered for the new bonds. * * * The power of the board under the law was then exhausted." And the court held that the bonds, issued in excess of the amount limited by law, although apparently legal and valid on their face, were void. In Daviess Co. v. Dickinson, 117 U. S. 657, 6 Sup. Ct. Rep. 897, the court says: "The statute authorized the county court to subscribe for such an amount of stock only as should be fixed and proposed by the commissioners and named in the statute. * * * That amount [fixed by the commissioners] was $250,000. The county court had therefore no authority to issue bonds for a greater amount, and any bonds issued in excess of that amount were unlawful and void." In the latter case the county judge had certified to the validity of the bonds, and in both cases it was strenuously contended that the county was estopped to deny the validity of the bonds, as they were issued by officers of the county, and been purchased in good faith by innocent holders without notice; but the court, nevertheless held such bonds, so issued in excess of the amount limited by statute, and in the other by the act of the commissioners designated to fix the amount, void. In the case at bar, the amount to be ex-

pended in the erection of the district school house was limited to a sum not to exceed $5,000, and when the order for that amount was issued the power of the school board was exhausted, and, if a part of the amount was used for or diverted to other purposes, it can make no difference as to the power of the board to issue warrants in excess of the amount limited. Without further authority from the district to issue warrants or orders in excess of the sum first limited, the orders issued were void. It is contended by the counsel for respondent that the money was raised by the district, and placed in the treasurer's hands, and that only $4,075 had been drawn out by the school board, and that there should have been $925 in the fund at the time the orders in suit were drawn. But I do not think the agreed statement bears out the counsel's theory. No funds were raised by the district and placed in the district treasury, as I understand the statement, except the amount raised under the authority given to erect the school house. The only money raised or authorized was that obtained by the issue and sale of the $5,000 order on August 2d. In no part of the agreed statement is it shown that the board had any authority conferred on it by the school district, other than the authority to build the school house at a cost not to exceed $5,000. I am of the opinion, therefore, that the orders in suit were issued without authority, and are void, except as to $168 for appendages, which I am inclined to think may be recovered on the grounds stated in the opinion of the court.

There are several other questions presented by the briefs of counsel, and discussed in the opinion of the court; but as my dissent is based upon the want of authority in the school board to issue the orders in controversy, issued in September, 1881, they being, as I claim, in addition to the $5,000 order issued August 2, 1880, I do not deem it necessary to consider them.